UNITED STATES of America, Plaintiff,

v.

John A. HAUGHN, Jr., Defendant.

Crim. No. 76–57.

United States District Court,
D. New Jersey.

May 14, 1976.

Joseph Burns, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Weiner & Sussan, East Brunswick, N. J., for defendant.

## OPINION

LACEY, District Judge.

This matter is before the court on a motion by defendant to suppress the admission into evidence of a sawed-off shotgun seized by the government on the landing outside defendant's apartment. Defendant is charged in a one-count indictment with knowingly possessing a sawed-off shotgun that had not been registered to him in violation of 26 U.S.C. §§ 5861(d) and 5871.

The course of events leading to the discovery were as follows. Based on information obtained through a confidential informant, Investigator Rohen from the Middlesex County Prosecutor's office applied for and received a search warrant from the Honorable John E. Bachman of the Superior Court for the second floor of defendant Haughn's apartment building at 255 Hale Street in New Brunswick. Transcript of Hearing at 3–4. According to the application, the search was for stolen liquor, a liquor advertisement in the form of a stein and a sawed-off shotgun. The informant was an individual whom Investigator Rohen had known for a period of time and who was himself involved in police work. Transcript at 5, 14–15. The informant told Investigator Rohen that within the last week or two prior to December 20, 1975, he had personal knowledge of a sawed-off shotgun located within the premises of the defendant. Government Letter of May 11, 1976. The informant had previously given reliable information to Police Officer Michael Roberts which was corroborated by the discovery of a similar sawed-off shotgun found in the locker of defendant Speights. Transcript at 5, 15–19.

At the apartment house of defendant, the investigators were at first denied entrance initially by the landlady. They, however, identified themselves and showed a copy of the search warrant to her and she admitted them into the building. Transcript at 6, 29–30. They proceeded upstairs to the second floor apartment of defendant Haughn. When reaching the landing on the second floor, they found the front door locked. The landlady indicated to them that the back door was open. She gave them access to her back door. They proceeded up a staircase and entered through the back door of the apartment. They searched the apartment, finding suspected stolen property, liquor and a ceramic mug, but they failed to find the shotgun. They then opened the front door of the apartment from the inside and observed some children's bicycles and a black police raincoat which was resting on a black attache case. The shotgun was found in the raincoat and seized by the investigators. Transcript at 30–32.

Defendant's motion to suppress is based on two grounds. First, the application for the warrant did not establish the requisite probable cause for its issuance and, second, even if probable cause was established, that showing went only to the apartment proper and not to the landing where the shotgun was discovered.

As to the first issue, defendant Haughn argues that when information, upon which the government intends to rely to establish a basis for a search warrant, comes from an informant, the application must show that the informant was credible or that his information was reliable. The government,

defendant asserts, has failed to meet that burden.

■ When the validity of a search warrant is being examined "for federal prosecutory purposes and the resulting search is 'state' in character, the warrant need only satisfy federal constitutional requirements rather than those of state law, which may involve stricter standards." *United States v. Bedford*, 519 F.2d 650, 653–54 (3d Cir. 1975). It is necessary to show only that the Fourth Amendment's imperatives have been observed. *Id.* at 654. Therefore, this court is bound by the constitutional requirements of federal law.

■ In *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court set forth the standards for a warrant to meet the Fourth Amendment's imperatives. It must describe with particularity the place to be searched and the things to be seized and must be based on probable cause. As to the probable cause issue, the application outlined that the information was gained from personal knowledge and personal conversations by a confidential informant with the defendant. The informant was known to the investigators and had given reliable information in the past. I find that probable cause to search was shown and the warrant was properly issued. The requirements of *Spinelli* and *Aguilar* having been met, defendant Haughn's motion to suppress on the first ground is denied.

Defendant next argues that the probable cause showing went only to the apartment proper and not to the area where the weapon was found. The landing was outside of the apartment. While the officers may have been properly in the hallway, this, according to defendant, did not amount to a right to search the area.

The government counters by saying that the search need not be confined to the apartment proper, citing *Drummond v. United States*, 350 F.2d 983 (8th Cir. 1965), cert. denied, 384 U.S. 1013, 86 S.Ct. 1968, 16 L.Ed.2d 1031 (1966), where the court held that consent to a search of the house applied to its curtilage as well. The decision of course rested on the concept of curtilage and whether a garage was a curtilage of the house. The court concluded that the written consent to a search had application to the garage as well as the house itself. "If it is subject to Fourth Amendment protection as part of the 'house' or curtilage . . . ., it should be equally subject to the effect of a consent to entry and search of one's 'residence'." *Id.* at 989. Whether the landing in the case at bar is part of the curtilage of the apartment is a difficult issue.

The court in *United States v. Romano*, 388 F.Supp. 101 (E.D.Pa.1975) discussed the concept of curtilage. The issue was whether newspapers taken from a drainpipe attached to the rear of a student residence was lawfully seized by agents. It concluded that the drainpipe was not part of the curtilage of defendant's residence.

The Third Circuit in *Fixel v. Wainwright*, 492 F.2d 480 (1974), did specifically approve the application of the Fourth Amendment to the curtilage of a building. It found that the enclosed backyard of property containing a four-unit apartment building in which defendant lived was entitled to the protection usually afforded the curtilage of a private residence. The backyard was not a common passageway normally used by the tenants for gaining access to the apartments. The area was not "open as a corridor to salesmen or other businessmen who might approach the tenants in the course of their trade." *Id.* at 484. The yard was completely removed from the street and surrounded by a chain link fence. The decision of the court that the search was unlawful, however, rested on the reasonable expectation of privacy which is, I believe, the heart of the matter. Because defendant's backyard area was so "removed and private in character that he could reasonably expect privacy," *id.*, the invasion violated the Fourth Amendment.

■ Rather than employing the concept of curtilage, which has been signifi-

cantly modified when applied to multiple dwellings [*see United States v. Romano, supra*, 388 F.Supp. at 104; *United States v. Conti*, 361 F.2d 153, 157 (2d Cir. 1966), *vacated on other grounds*, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968); *United States v. Miguel*, 340 F.2d 812, 814 (2d Cir.), *cert. denied*, 382 U.S. 859, 86 S.Ct. 116, 15 L.Ed.2d 97 (1965)], the scope of Fourth Amendment protection should be based upon the degree of privacy an individual should reasonably expect. *See United States v. Romano, supra*, 388 F.Supp. at 105. While the maxim in *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), provides that the Fourth Amendment protects "people not places," in considering what people can reasonably expect to maintain as private, we must inevitably speak in terms of places. And each case must be decided upon its particular facts. Whether defendant Haughn's expectation of privacy on the landing was reasonable is subject to an objective test. The expectation must be "one that society is prepared to recognize as 'reasonable.'" 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588 (Harlan, J., concurring); *Patler v. Slayton*, 503 F.2d 472, 478 (4th Cir. 1974). I find that the landing outside defendant's apartment is not sufficiently removed and private in character that he could reasonably expect privacy. The hallway, while not open to the public, was a passageway to the apartment of defendant—the chief means for gaining access to it. It is the corridor used by all sales and business people who might approach defendant or his family in the course of their trade. The circumstances do not reflect a violation of defendant's Fourth Amendment rights. Defendant's motion is therefore denied. An appropriate order has been prepared by the court and is filed herewith.