THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
BLAKE LOVELESS, Defendant-Appellee.

Third District    No. 78-212

Opinion filed January 24, 1980.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Blake Loveless, was charged by indictment with the offense of unlawful possession of cannabis in violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1975, ch. 56½, par. 704(d)). Prior to trial the defendant moved to suppress the cannabis seized on the grounds that it had been obtained as a result of an illegal seizure. The Circuit Court of Peoria County granted the defendant's motion to suppress, and the State appeals. Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)(1).

On March 2, 1977, the Peoria Police Department received an

anonymous tip that Blake Loveless was selling drugs at Gene's 615 Club in Peoria. According to the tip, the defendant was wearing an "orangish brown leather jacket." In response to this tip, Officer John Stenson, who knew Loveless by sight, arrived at the club. Upon entering the building he observed Loveless sitting on the first bar stool by the front door. Directly across from where he was seated was a booth and a table. At this time Loveless was not wearing an outer garment. However, on the table there had been placed a leather "coat" fitting the description of the coat given in the tip. The coat was folded in half. Officer Stenson walked directly over to the table and began to pick up the coat. The defendant, upon seeing this, said, "Hey man, that's my coat." Nevertheless, Officer Stenson continued to pick up the coat, and as he did so a brown paper sack fell out on the table. As it fell it opened, and Officer Stenson observed that the sack contained a number of manila envelopes. On the basis of past experience, Stenson knew that such envelopes commonly contained marijuana. Consequently, Loveless was placed under arrest.

The only issue presented in this case on appeal is whether the trial court properly suppressed evidence obtained by the police as the result of a warrantless seizure of the defendant's coat, which at the time of the seizure was lying on a table in a public place a short distance from where the defendant was seated. Before we subject the State's conduct to fourth amendment scrutiny, however, we must address the threshold question of whether the fourth amendment applies to the governmental intrusion in the instant case.

In determining whether the fourth amendment applies to this case, we must decide whether the defendant had a "reasonable expectation of privacy" with regard to his coat. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. " (*Katz v. United States* (1967), 389 U.S. 347, 351-52, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511.) Such an expectation must be justifiable to be protected. (*United States v. White* (1971), 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122.) The standard is an objective one, as a justifiable expectation of privacy is one which society, and not the individual, is prepared to recognize as reasonable. *United States v. Speights* (D.N.J. 1976), 413 F. Supp. 1221.

The State argues that the defendant, by placing his coat on a table in a public place, some distance away from where he was seated, had no reasonable expectation of privacy in regard to that coat. Of the four cases relied upon by the State in support of its position (*United States v. Alewelt* (7th Cir. 1976), 532 F.2d 1165; *Patler v. Slayton* (4th Cir. 1974), 503 F.2d 472; *United States v. Haughn* (D.N.J. 1976), 414 F. Supp. 37;

*United States v. Speights* (D.N.J. 1976), 413 F. Supp. 1221), we find the *Alewelt* case to be the most analogous to the case at bar. In *Alewelt*, the FBI received information that a man fitting the defendant's description and wearing a "brown leather Air-Force-type jacket, white cloth cap and metal framed, reflective sunglasses" had robbed a Springfield, Illinois, bank. On the day of the robbery, the investigators went to the office of the defendant's mother, who worked at the Department of Public Health. The door to the office was open, and upon entry, the agents observed on a coat rack "a brown leather Air-Force-type jacket. In the jacket pocket, apparently clearly visible, were a white cloth cap and several bundles of money in wrappers." (532 F.2d 1165, 1167.) The agents consequently seized the jacket. On appeal, the defendant contended that he had a reasonable expectation of privacy with regard to his jacket and thus the agents' warrantless seizure should be subjected to fourth amendment scrutiny. The court disagreed:

> "[B]y placing the jacket on a coat rack in the general working area of an outer office where he had no possessory interest, the defendant relinquished that degree of control, and reasonable expectation of privacy, necessary to sustain a challenge to the legality of the subsequent search and seizure on Fourth Amendment grounds. (*Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). He knew that during business hours the office was occupied by numerous state employees and any member of the public could lawfully enter it. * * * He knew or should have known that the coat rack was so placed that a person in the public hall could see the jacket through the open doorway without actually entering the room. 'What a person knowingly exposes to the public * * * is not a subject of Fourth Amendment protection.' *Katz v. United States, supra*, 389 U.S. at 351, 88 S. Ct. at 511, 19 L. ed. 2d at 582." 532 F.2d 1165, 1168.

Just as defendant Alewelt had no reasonable expectation of privacy with regard to his jacket hung on a coat rack in an office open to the public, Blake Loveless had, at least initially, no reasonable expectation of privacy with regard to his coat placed on the table in Gene's 615 Club. An individual who places a coat on a table in a busy tavern must reasonably expect that that coat will be touched or handled by an employee or by any member of the public who desires to use or sit at that table. Indeed, it is unreasonable to assume that it will not be. By placing his coat on the table, Loveless knowingly exposed it to the public, and as a consequence had then no reasonable expectation of privacy with regard to it.

However, the Supreme Court's statement in *Katz* that "[w]hat a person knowingly exposes to the public * * * is not a subject of Fourth Amendment protection" has one major qualification: "But what he seeks

to preserve as private * * * may be constitutionally protected." (389 U.S. 347, 351-52, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511.) Officer Stenson testified at the suppression hearing that as he started to pick up the coat, Loveless stated, "Hey man, that's my coat." Despite Loveless' statement, which we can only interpret as being an objection to Stenson's actions, Stenson said he continued to pick up the coat. It was not until he did so that the bag containing the contraband fell out on the table. Loveless' reaction to Stenson's picking up of his coat is not unexpected, nor in our view, unreasonable. Society expects one to object when he discovers a nonconsensual interference with his personal property. Society equally expects the interference to cease once a justifiable objection to that interference is made. There can be no doubt that the defendant did not have a reasonable expectation of privacy with regard to his coat when he placed it on the table. However, once he voiced his objection to the interference with his coat, he was, in the terminology of *Katz*, seeking to preserve it as private. We believe one who has by his actions exhibited no reasonable expectation of privacy, even by abandonment, is not always precluded from regaining the privacy he has relinquished. Loveless' effort to stop the interference with his obviously unabandoned personal property, and in so doing regain some degree of privacy with regard to it, is one which we believe society views as both reasonable and justifiable. At the moment Loveless stated his objection to Stenson's actions, that officer's activities constituted a governmental intrusion upon the defendant's reasonable expectation of privacy and a seizure for the purposes of the fourth amendment in our view.

The illegality of the seizure of defendant's coat becomes apparent in the light of the fourth amendment. The only information which could have possibly given the police probable cause to effectuate a warrantless seizure of the defendant's coat was obtained from the tip received from an anonymous informant that Loveless was at the tavern wearing a coat of a certain color and selling drugs. In *People v. Parren* (1962), 24 Ill. 2d 572, 576, 182 N.E.2d 662, 664, the Illinois Supreme Court held that a tip received from an anonymous informant that the defendant was selling drugs at a particular address did not constitute probable cause for the defendant's arrest, and therefore the search incident to that arrest was illegal: " '[A]n uncorroborated tip by an informer whose identity and reliability are both unknown does not constitute probable cause to make an arrest' " (quoting *Contee v. United States* (D.C. Cir. 1954), 215 F.2d 324, 327). The reasoning of the *Parren* case is obviously applicable to a warrantless seizure situation.

No case involving police activity initiated by an anonymous tip would be complete without an examination of that tip in light of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli*

*v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584. *Aguilar* stands for the proposition that if probable cause is to be based solely upon the information received from an informant, then in the case of a warrantless arrest, search or seizure, the testimony presented at the pretrial suppression hearing must show (1) underlying circumstances showing reason to believe that the informant is credible, and (2) underlying circumstances showing the basis of the informant's conclusion. Obviously, in the case of an anonymous informant (as here), it is impossible to present any underlying circumstances showing the informant to be either credible or reliable.

In *Spinelli*, the Supreme Court realized that although the "underlying circumstances" showing the credibility and reliability of the informant may oftentimes be absent when the tip is received, subsequent corroboration may lend extra support to the credibility and/or reliability of the informant so that his information may constitute probable cause. The test under *Spinelli* is whether the tip with the corroboration is "as reliable as one which passes *Aguilar's* requirements when standing alone." (393 U.S. 410, 416, 21 L. Ed. 2d 637, 643, 89 S. Ct. 584, 589.) There could be some contention on the part of the State that the fact the defendant was at the tavern and did have an "orangish brown" leather coat supplied sufficient corroboration under *Spinelli*. However, despite this apparent corroboration, there is still no showing of the informant's credibility. It may be true that the eventual finding of marijuana in Loveless' coat was corroboration of the tip, but as the supreme court stated in *Parren*, "the legality of a search is not to be determined by its results." 24 Ill. 2d 572, 576, 182 N.E.2d 662, 664 citing *Johnson v. United States* (1948), 333 U.S. 10, 16-17, 92 L. Ed. 436, 442, 68 S. Ct. 367, 370.

██ Certainly there are some emergency situations in which police action based upon an anonymous tip may be justified. (See *In re Boykin* (1968), 39 Ill. 2d 617, 237 N.E.2d 460.) However, under the circumstances here, given the fact that the tip of an anonymous informant whose credibility and reliability are unknown and virtually uncorroborated was the sole basis for the warrantless seizure of the defendant's jacket, there was no justification for the officer's actions. The seizure of Blake Loveless' coat was illegal, and the motion to suppress the cannabis found as a result of the seizure properly granted.

The order of the circuit court of Peoria County is affirmed.

Order affirmed.

ALLOY and SCOTT, JJ., concur.