COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


SULAYMAAN AL-KARRIEN, S/K/A
 SULAYMAAN AL-KARRIEM
                                          OPINION BY
v.   Record No. 0402-01-2          JUDGE LARRY G. ELDER
                                         APRIL 2, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                   Margaret P. Spencer, Judge

          Craig W. Stallard, Assistant Public Defender
          (Office of the Public Defender, on brief),
          for appellant.

          Robert H. Anderson, III, Senior Assistant
          Attorney General (Randolph A. Beales,
          Attorney General, on brief), for appellee.


     Sulaymaan Al-Karrien, sometimes known as Sulaymann

Al-Karriem (appellant), appeals from his conviction for

possession of cocaine with an intent to distribute in violation

of Code § 18.2-248.  On appeal, he contends the trial court

erroneously denied his motion to suppress the cocaine, which was

found in a cup of soup he relinquished at the direction of a

police officer.  We hold the trial court's finding that

appellant abandoned the cup and its contents when he

relinquished it at the direction of a police officer was plainly

wrong.  We further hold the record does not support the

alternate finding urged by the Commonwealth, that appellant

abandoned the cup and its contents when he did not seek to reclaim it following a weapons frisk while he remained in the custody of the police. We also reject the Commonwealth's contention that the search of the cup was justified by the plain view doctrine or the existence of probable cause to arrest appellant for some other offense. Because no evidence other than the illegally seized cocaine supported appellant's conviction, we reverse the conviction and dismiss the charge.

I.

BACKGROUND[1]

At around 12:00 p.m. on November 5, 1999, while on routine patrol in a marked police car, Officers A.J. Jones and E.L. Gadson, Sr., saw a group of four juveniles standing together in front of a convenience store. Officer Jones could not tell whether the juveniles were talking to each other and "traveling together" or "if they were just in close proximity." After looking in the officers' direction, three of the juveniles "ran inside the store." Officer Jones suspected the juveniles were truant, and he went into the store "to interview them and find out their ages."

Once inside the store, Officer Jones saw that appellant had gone to the left and the other two juveniles had gone to the

---

[1] In ruling on a motion to suppress, we consider the evidence adduced at both the suppression hearing and the trial. DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987).

right.  The officers told the juveniles to show their hands, which they did, and Officer Jones approached appellant. Appellant had in his hand "[a] cup of noodles," "like Oodles of Noodles that you pour hot water into."  Appellant also had "a tobacco product behind his ear," and he looked "scared, worried."  Jones thought appellant did not look "old enough not to be in school" and "to have tobacco products," and Jones asked appellant how old he was.  Although appellant was seventeen years old at the time, he told Officer Jones he was nineteen. Appellant also gave Jones a false name, although the record does not establish when Officer Jones learned this name was false. When Officer Jones asked appellant for identification to prove his age, appellant was unable to produce any identification.

At about that same time, another officer found a gun in the possession of one of the other juveniles, and Officer Jones told appellant "[he] was going to pat [appellant] down for weapons." Prior to conducting the pat-down, "[Officer Jones] asked for [appellant's] cup of noodles" because he "want[ed] appellant's hands free and clear" during the pat-down.  Appellant had not yet paid for the cup of noodles.  Appellant handed Officer Jones the cup of noodles, and Officer Jones set the cup down on the counter in the front of the store.

After patting appellant down and finding no weapons, Officer Jones left the cup of noodles unattended and escorted appellant outside, where he placed appellant in the custody of

Officer Gadson.  Although Jones had seen appellant in possession of a tobacco product, he agreed that department policy was not to arrest a juvenile in possession of a tobacco product and that he would have issued appellant a summons for that offense if he had determined that appellant was underage.  Officer Jones said appellant was being detained on suspicion of truancy until the officers could "find out his age and who he was."

While Officer Gadson "watch[ed] [appellant]," Officer Jones reentered the store to "look for contraband."  While searching the back of the store where the other two juveniles had been standing, Jones found contraband in the form of "one rock."  Saying "something told me to check the cup of noodles," Jones then moved to the front of the store, where he examined appellant's cup of soup.  When he first looked into the cup, he saw only soup.  When he stirred the soup, however, "one off-white rock," which he believed to be cocaine, "[rose] to the top" of the cup of soup.  Jones agreed that the rock "wasn't immediately visible" and that "[he] had to stir the cup of noodles to see that there was something inside."

As Officer Jones walked back outside the store, he continued to stir the cup and eventually found "floating" in the cup a total of seven "small ziplock plastic [bags] containing" what appeared to be the same "off-white" substance.  Once Officer Jones found the suspected cocaine in the cup of noodles, he placed appellant under arrest.  Subsequent laboratory testing

indicated that the bags extracted from the soup contained a total of approximately two grams of cocaine.

Appellant moved to suppress the cocaine, contending that the police forced him to relinquish the cup of soup and that they did not have reasonable suspicion, a search warrant, probable cause and exigent circumstances, or probable cause for arrest to justify their search of the cup. The Commonwealth argued that the search of the cup was justified because the officers had probable cause to arrest, because the "evidence [was] in plain view," or because appellant abandoned the cup. The Commonwealth conceded, however, that appellant relinquished possession of the cup "at the direction of [Officer Jones]."

The trial court denied the motion to suppress, finding

> that [appellant] was lawfully detained and arrested and that the officer lawfully seized and looked at the cup of noodles, which was put down not at the direction of the officer. The officer said he wanted to pat [appellant] down. [Appellant] could have easily held the cup of noodles up in his hand while the officer patted him down.

(Emphasis added).

## II.

## ANALYSIS

On appeal of the denial of a motion to suppress, we consider the evidence adduced at both the suppression hearing and the trial, DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987), and we view that evidence in the light most favorable to the Commonwealth, Commonwealth v.

Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc), but we review de novo the trial court's application of defined legal standards such as reasonable suspicion and probable cause to the particular facts of the case, see Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996).

Although "the Fourth Amendment protects people, not places," Katz v. United States, 389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed. 2d 576 (1967), "[the] capacity to claim [its] protection . . . depends . . . upon whether the person . . . has a legitimate expectation of privacy in the invaded place [or object]." Rakas v. Illinois, 439 U.S. 128, 143, 99 S. Ct. 421, 430, 58 L. Ed. 2d 387 (1978).

> First, we must determine whether the individual has manifested "a subjective expectation of privacy" in the object of the challenged search. This inquiry is a factual determination to which we must give deference on appeal. Second, we must determine whether the expectation of privacy is objectively reasonable, one that society is willing to recognize as legitimate. This is a legal determination, requiring no deference on review.

Johnson v. Commonwealth, 26 Va. App. 674, 683-84, 496 S.E.2d 143, 148 (1998) (citations omitted) (quoting Wellford v. Commonwealth, 227 Va. 297, 301, 315 S.E.2d 235, 237 (1984)).

"[This] guarantee protects alike the 'traveler who carries a toothbrush and a few articles of clothing in a paper bag' and 'the sophisticated executive with a locked attaché case.'" Smith v. Ohio, 494 U.S. 541, 542, 110 S. Ct. 1288, 1289, 108 L. Ed. 2d 464 (1990) (quoting United States v. Ross, 456 U.S. 798, 822, 102 S. Ct. 2157, 2171, 72 L. Ed. 2d 572 (1982)).

An individual who has a legitimate expectation of privacy in an object nevertheless may abandon that expectation, thereby forfeiting "all standing to complain of its warrantless search and seizure." Wechsler v. Commonwealth, 20 Va. App. 162, 173, 455 S.E.2d 744, 749 (1995). Although the individual whose property was searched bears the burden of proving a legitimate expectation of privacy in the item searched, the burden of proving abandonment is on the government. United States v. Ramos, 12 F.3d 1019, 1023 (11th Cir. 1994).

In appellant's case, the Commonwealth argued that appellant abandoned the cup of soup in the convenience store because he had not yet paid for it and he relinquished his possession of it, albeit at the direction of Officer Jones. It also argued that the police had probable cause to arrest appellant for truancy, thereby permitting a search of the cup incident to arrest, or, in the alternative, that the search of the cup was justified because Officer Jones saw the contraband in plain view in the cup. The Commonwealth did not argue that appellant lacked a reasonable expectation of privacy in the cup and its

contents while it remained in appellant's actual physical possession.  The trial court denied the motion to suppress based on a finding that appellant abandoned the cup when he relinquished possession of it prior to the pat-down.  In this fashion, the Commonwealth implicitly conceded, and the trial court implicitly found, that appellant had a reasonable expectation of privacy in the cup of noodles while it remained in his actual possession.  Thus, we assume without deciding that appellant had such an expectation, and we consider whether the evidence supported the trial court's ruling that appellant abandoned any expectation of privacy he may have had in the cup.

Abandonment under the Fourth Amendment

> is different from the property law concept
> of abandonment.  A person may retain a
> property interest in personal property
> while, at the same time, relinquishing his
> or her reasonable expectation of privacy in
> that property.  A person's "[i]ntent to
> retain a reasonable expectation of privacy"
> [governs] whether the property has been
> abandoned . . . [and] is to be determined by
> objective standards.  Such an intent may be
> inferred from words, acts and other
> objective facts.  The determination of this
> intent must be made after consideration of
> all relevant circumstances, but two factors
> are particularly important: denial of
> ownership and physical relinquishment of the
> property.

Holloway v. Commonwealth, 9 Va. App. 11, 18, 384 S.E.2d 99, 103 (1989) (quoting United States v. Kendall, 655 F.2d 199, 200 (9th Cir. 1981)) (citations omitted).

"[A]n absence of assertion of ownership does not necessarily constitute abandonment.  Whether relinquishing physical possession . . . represents a voluntary abandonment . . . depends upon the nature of the act and the circumstances surrounding the act."  Id. at 18-19, 384 S.E.2d at 103 (citations omitted).  For example, a citizen who "throw[s] [his private property] on a car to respond to a police officer's inquiry" and then "attempts to protect [that] property from inspection . . . clearly has not abandoned that property." Smith, 494 U.S. at 543-44, 110 S. Ct. at 1290.  Similarly, absent additional evidence of abandonment, an individual who "merely . . . plac[es] [his property] down as ordered by the police" does not "abandon [that property] and forego his expectation of privacy."  State v. McBee, 593 N.E.2d 574, 581 (Ill. App. Ct. 1992).

Conversely, an individual who, when approached by police in a consensual encounter, disposes of an item in his possession by "throwing [it] toward a nearby garbage can and pile of garbage evince[s] his intent to abandon and dispose of it."  State v. Thomas, 609 N.Y.S.2d 614, 615 (N.Y. App. Div. 1994) (involving search of discarded orange juice container in which illegal drugs were found).  Similarly,

> the driver of an automobile who, when the
> vehicle caught on fire, pulled off to the
> side of the highway, got out of the vehicle,
> left the scene in another automobile and had
> not returned two to three hours later, was

> deemed to have abandoned and, therefore,
> forfeited his expectation of privacy in a
> briefcase in the trunk of a burning
> automobile.

Holloway, 9 Va. App. at 19, 384 S.E.2d at 103 (citing United

States v. Oswald, 783 F.2d 663, 667 (6th Cir. 1986)).

We hold that the trial court was plainly wrong in finding

that appellant abandoned "the cup of noodles" because he "put

[it] down not at the direction of the officer."  (Emphasis

added).  Although the trial court said "[appellant] could have

easily held the cup of noodles up in his hand while the officer

patted him down," the evidence in the record, viewed in the

light most favorable to the Commonwealth, establishes that

appellant relinquished "[the] cup of noodle soup . . . at

[Officer Jones'] direction," and the Commonwealth conceded this

fact during argument in the trial court.  As set out above, an

individual who relinquishes possession of an object when ordered

to do so by the police does not "abandon [that object] and

forego his expectation of privacy" in it.  McBee, 593 N.E.2d at

581.  Thus, in the face of Officer Jones' direction to appellant

to relinquish possession of the cup, whether "[appellant] could

have easily held the cup of noodles up in his hand while the

officer patted him down" was irrelevant to the analysis and

provides no basis for the trial court's finding of abandonment.

Without expressly conceding that the trial court erred in

ruling that appellant abandoned the cup of soup by relinquishing

his possession of it prior to the weapons frisk, the Commonwealth contends the trial court's finding of abandonment was correct because appellant abandoned the cup when he "chose to leave the soup behind when he went outside of the store."  We hold even evidence that appellant had an opportunity to reclaim and purchase the cup of soup but did not do so would not establish that appellant abandoned the soup.  It is undisputed that appellant remained in the custody of the police officers at all relevant times after he relinquished possession of the soup at Officer Jones' direction until Officer Jones searched the soup.  As we acknowledged in Holloway, appellant's mere failure to "assert[] [an] ownership [interest] does not necessarily constitute abandonment."  9 Va. App. at 18-19, 384 S.E.2d at 103.  Thus, absent additional evidence of abandonment--such as appellant's disclaiming ownership, see, e.g. id. at 18, 384 S.E.2d at 103 (noting that "a disclaimer of ownership, although a strong indication of such a relinquishment, is not conclusive"); discarding the object, see, e.g., Thomas, 609 N.Y.S.2d at 615; or voluntarily departing from a public place where the object remains, see, e.g., Wechsler, 20 Va. App. at 173, 455 S.E.2d at 749 (holding accused abandoned luggage when, inter alia, he left it on airport baggage carousel, departed terminal building and attempted to enter cab)--the record contains insufficient evidence to support the Commonwealth's alternative contention regarding abandonment.

Next, we reject the Commonwealth's contention that the search of the soup was justified because Officer Jones saw the contraband contained in the cup of noodles in plain view. See, e.g., Conway v. Commonwealth, 12 Va. App. 711, 718, 407 S.E.2d 310, 314 (1991) (en banc). Our affirmance of the trial court's ruling on this ground is inappropriate not only because the trial court made no factual findings on this issue but also because the evidence, viewed in the light most favorable to the Commonwealth, establishes that Officer Jones saw nothing unusual in the cup of noodles until he stirred its contents. Only after he stirred the contents did he see the plastic baggies containing rocks of crack cocaine. See Arizona v. Hicks, 480 U.S. 321, 326, 107 S. Ct. 1149, 1153, 94 L. Ed. 2d 347 (1987) (holding that stolen stereo not property seized under plain view doctrine because officers had to move stereo to see serial numbers which allowed them to conclude item was stolen). Thus, we hold as a matter of law that the plain view exception to the warrant requirement does not apply.

Finally, we reject the Commonwealth's contention that we may affirm the trial court's denial of the suppression motion because Officer Jones' search of the cup was justified by the existence of probable cause to arrest. On appeal, the Commonwealth argues that probable cause existed to arrest appellant for (1) possession of illegal drugs, based on the "concert of action between [appellant] and the other juveniles

and the discovery of the gun on one of [appellant's] companions" and (2) truancy. Regarding probable cause to arrest for illegal possession, the record contains insufficient evidence to link appellant to either the single "rock" or the other two juveniles who may have discarded that rock. Officer Jones said only that he found the rock in the same area where the other two juveniles stood in the store. Assuming that this statement provided probable cause to arrest the other two juveniles for possession of the rock, no evidence indicated that appellant had any connection to those juveniles other than that he was in proximity to them while standing outside the convenience store as the police approached and that all three juveniles ran into the store when the police arrived.

As to the existence of probable cause to arrest appellant for truancy, the Commonwealth advanced this argument in the trial court, but the record contains insufficient evidence to establish that the police had probable cause for a truancy arrest at the time Officer Jones searched the cup.

> [P]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed. In order to ascertain whether probable cause exists, courts will focus upon "what the totality of the circumstances meant to police officer trained in analyzing the observed conduct for purposes of crime control."

Taylor v. Commonwealth, 222 Va. 816, 820-21, 284 S.E.2d 833, 836 (1981) (quoting Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976)) (citations omitted).

Here, the record established only that, at the time Officer Jones seized and searched appellant's cup, Jones knew that school was in session and that appellant did not look "old enough [to Jones] not to be in school."  Although appellant looked "scared" and "worried" when Officer Jones approached him, he told Officer Jones he was nineteen years old.  Officer Jones testified that "[appellant] did not look 19 to [him]," but he did not articulate his specific basis for this belief.  Officer Jones testified that he and Officer Gadson were continuing to try to "find out [appellant's] age and who he was" and that they had not arrested him at that time.  Although the record indicates that appellant gave Officer Jones a false name, it does not establish whether this occurred before or after Officer Jones searched appellant's cup.  Thus, the totality of the circumstances does not support a finding that, at the time of the search, Officer Jones had knowledge of sufficient "facts and circumstances . . . to warrant a person of reasonable caution to believe that [appellant was truant]."  Compare People v. Humberto O., 95 Cal. Rptr. 2d 248, 251 (Cal. Ct. App. 2000) (holding that police had reasonable suspicion to detain defendant for truancy because he was "youthful-looking," was carrying a backpack and was spotted several miles from school

during school hours and that police developed probable cause for arrest when defendant confirmed that he attended school, failed to provide an excuse for his absence, and gave the officers identification belonging to someone else).  The information within the officers' knowledge provided them, at most, with reasonable suspicion to attempt to further investigate appellant's age and identity.  But see Berkemer v. McCarty, 468 U.S. 420, 439-40, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317 (1984) (noting that Terry stop permits "the officer [to] ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" but that "the detainee is not obliged to respond" and that "unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released" (footnote omitted)).

For these reasons, we hold the evidence failed to prove appellant abandoned the cup and its contents.  We also hold that the search was not supported by either the plain view exception to the warrant requirement or the existence of probable cause to arrest appellant for truancy.  Because no evidence other than the illegally seized cocaine supported appellant's conviction, we reverse the conviction and dismiss the charge.

Reversed and dismissed.