COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Elder and Senior Judge Annunziata*
Argued at Chesapeake, Virginia


AUGUSTUS MAYFIELD

                                          MEMORANDUM OPINION** BY
v.        Record No. 2713-03-1              JUDGE LARRY G. ELDER
                                              JANUARY 11, 2005
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                     Charles E. Poston, Judge

        Sherrise Powers, Assistant Public Defender (Norfolk Public
        Defender's Office, on brief), for appellant.

        Paul C. Galanides, Assistant Attorney General (Jerry W. Kilgore,
        Attorney General, on brief), for appellee.


        Augustus Mayfield (appellant) appeals from his conviction for possession of cocaine,

entered upon his conditional plea of guilty following the trial court's denial of his motion to

suppress. On appeal, he contends the trial court erroneously denied the motion, concluding that

the search of a tissue he threw to the ground while engaged in a consensual encounter with police

did not violate the Fourth Amendment. Under the facts of this case, we hold the evidence

supported the conclusion that appellant abandoned the tissue and that the police officer's

recovery of the tissue and its contents was not an unreasonable search or seizure. Thus, we

affirm.

        * Judge Annunziata participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2004 and thereafter by her designation as a
senior judge pursuant to Code § 17.1-401.

        ** Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On appeal of the denial of a motion to suppress, we consider the evidence adduced at both the suppression hearing and the trial, DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987), and we view that evidence in the light most favorable to the Commonwealth, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc), but we review *de novo* the trial court's application of defined legal standards such as reasonable suspicion and probable cause to the particular facts of the case, see Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996).

Although "the Fourth Amendment protects people, not places," Katz v. United States, 389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed. 2d 576 (1967), "[the] capacity to claim [its] protection . . . depends . . . upon whether the person . . . has a legitimate expectation of privacy in the invaded place [or object]." Rakas v. Illinois, 439 U.S. 128, 143, 99 S. Ct. 421, 430, 58 L. Ed. 2d 387 (1978). "Abandonment in the context of the Fourth Amendment is different from the property law concept of abandonment. *A person may retain a property interest in personal property while, at the same time, relinquishing his or her reasonable expectation of privacy in that property [under the Fourth Amendment]*." Commonwealth v. Holloway, 9 Va. App. 11, 18, 384 S.E.2d 99, 103 (1989) (quoting United States v. Kendall, 655 F.2d 199, 200 (9th Cir. 1981)) (emphasis added) (citations omitted). In order for the Fourth Amendment to permit the seizure and search of such an item without a warrant, the abandonment "must be 'truly voluntary and not merely the product of police misconduct.'" Id. at 19, 384 S.E.2d at 103 (quoting United States v. Roman, 849 F.2d 920, 923 (5th Cir. 1988)).

The individual whose property was searched "bears the burden of proving a legitimate expectation of privacy in the item searched." Al-Karrien v. Commonwealth, 38 Va. App. 35, 43, 561 S.E.2d 747, 751 (2002).

> First, we must determine whether the individual has manifested "a subjective expectation of privacy" in the object of the challenged search. This inquiry is a factual determination to which we must give deference on appeal. Second, we must determine whether the expectation of privacy is objectively reasonable, one that society is willing to recognize as legitimate. This is a legal determination, requiring no deference on review.

Johnson v. Commonwealth, 26 Va. App. 674, 683-84, 496 S.E.2d 143, 148 (1998) (citations omitted) (quoting Wellford v. Commonwealth, 227 Va. 297, 301, 315 S.E.2d 235, 237 (1984)).

If the individual meets his burden of proving a legitimate expectation of privacy, the burden shifts to the Commonwealth to prove an abandonment of that Fourth Amendment expectation of privacy. Al-Karrien, 38 Va. App. at 43, 561 S.E.2d at 751. "Whether a person intends to retain a reasonable expectation of privacy in property is to be determined by objective standards [and] . . . may be inferred from words, acts, and other objective facts." Holloway, 9 Va. App. at 18, 384 S.E.2d at 103. For example, as we have previously noted, "a citizen who 'throw[s] [his private property] on a car to respond to a police officer's inquiry' and then 'attempts to protect [that] property from inspection . . . clearly has not abandoned that property' [for Fourth Amendment purposes]." Al-Karrien, 38 Va. App. at 44, 561 S.E.2d at 751 (quoting Smith v. Ohio, 494 U.S. 541, 543-44, 110 S. Ct. 1288, 1290, 108 L. Ed. 2d 464 (1990)). "Conversely, an individual who, when approached by police in a consensual encounter, disposes of an item in his possession by 'throwing [it] toward a nearby garbage can and pile of garbage evince[s] his intent to abandon and dispose of it.'" Id. at 44, 561 S.E.2d at 752 (quoting State v. Thomas, 609 N.Y.S.2d 614, 615 (1994) (involving search of discarded orange juice container in which illegal drugs were found)). If the item is in a public place where it might be discovered

and picked up by a passerby, the individual retains no objectively reasonable expectation of privacy in the item, and whether the individual has a subjective hope or intention of regaining possession of the item at a later time is not controlling.  See, e.g., 1 Wayne R. LaFave, Search & Seizure § 2.6(d), at 574-76 (3d ed. 1996) (recognizing that "even an inadvertent leaving of effects in a public place, whether or not an abandonment in the true sense of that word, can amount to a loss of any justified expectation of privacy").  "'[W]here incriminating evidence is discarded in a public area in anticipation of a police investigation, the Fourth Amendment does not set limits on its recovery by police, even where what is exposed to public view is not itself evidence of a crime.'"  Spriggs v. United States, 618 A.2d 701, 703 (D.C. 1992) (quoting Smith v. United States, 292 A.2d 150, 151 n.4 (D.C. 1972)).

Here, the trial court found the officers' encounter with appellant was consensual, and appellant does not contest this finding on appeal.  Further, whether Officer Pugh's taking appellant's arm constituted an unlawful seizure is immaterial because the evidence, viewed in the light most favorable to the Commonwealth, established both that appellant discarded the item and that Officer Cary retrieved it *before* Officer Pugh took appellant's arm.  See, e.g., State v. Reynolds, 27 P.3d 200, 205 (Wash. 2001) (holding that "whether the deputy's directive constituted an unlawful seizure of [the defendant] is immaterial" because defendant failed to establish he "discarded the item *after* the allegedly unlawful police conduct occurred").  No evidence tends to indicate that appellant's act of "tossing" the tissue, whether or not it constituted an abandonment, was involuntary or was "the product of police misconduct."  Thus, we examine only whether appellant had a legitimate expectation of privacy in the tissue and, if so, whether he abandoned that expectation for Fourth Amendment purposes.

We assume without deciding that appellant had both a subjectively and objectively reasonable expectation of privacy in the tissue and its contents while they remained in his

- 4 -

possession. As we have previously recognized, the Fourth Amendment "protects alike the 'traveler who carries a toothbrush and a few articles of clothing in a paper bag' and 'the sophisticated executive with a locked attaché case.'" Smith v. Ohio, 494 U.S. 541, 542, 110 S. Ct. 1288, 1289, 108 L. Ed. 2d 464 (1990) (quoting United States v. Ross, 456 U.S. 798, 822, 102 S. Ct. 2157, 2171, 72 L. Ed. 2d 572 (1982)), quoted with approval in Al-Karrien, 38 Va. App. at 42, 561 S.E.2d at 751. Nevertheless, we conclude the objective evidence, viewed in the light most favorable to the Commonwealth, was sufficient to meet the Commonwealth's burden of proving appellant abandoned that property for Fourth Amendment purposes, i.e., that he relinquished his reasonable expectation of privacy in it when he "tossed" it to the ground during the consensual encounter.

The objective facts, viewed in the light most favorable to the Commonwealth, established that appellant intentionally and voluntarily discarded the tissue during a consensual encounter with the police. The officers approached appellant to inquire whether he had a legitimate reason for being on apartment complex property, which the officers had been authorized by the complex's management to do in order to enforce the no-trespassing signs. During the encounter, appellant nervously moved a tissue from one hand to the other, and he "tossed" rather than dropped the tissue behind him when Officer Pugh inquired what appellant had in his hands. The objectively reasonable conclusion to be drawn from appellant's intentional act of "tossing" the tissue behind him was that appellant intended to abandon the tissue. Although appellant may have acted with the subjective intent to either retain or regain dominion and control over the tissue by putting his foot over it after dropping it, the fact was that he dropped it in a quasi-public place and that any passerby could have discovered it and picked it up, as Officer Cary obviously did, *before* appellant acted to place his foot over it. See Vines v. State, 237 S.E.2d 17, 18 (Ga. Ct. App. 1977) (where defendant approached by police officer with obstructed view of defendant

- 5 -

discarded heroin packets in view of second officer whose presence was unknown to defendant and second officer immediately retrieved packets, packets were abandoned property and their seizure did not violate Fourth Amendment); see also Lee v. United States, 221 F.2d 29, 30 (D.C. Cir. 1954) (where police received tip about stolen jewelry, had informant arrange meeting with suspected thief, and saw thief drop napkin into street as he exited car for questioning at request of police, "[t]here was . . . no seizure in the sense of the law when the officers examined the contents of the napkin after it had been dropped to the street"); State v. Jackson, 824 So. 2d 1124, 1125-26 (La. 2002) (upholding seizure of packet containing cocaine where defendant "'walked fast' to the porch of a house" when police entered the area and "'discreetly' dropped" packet from porch to ground when officers stood at property's fence and identified themselves as police officers, characterizing defendant's actions as abandonment by volitional act of "*let[ting]* his cocaine packet slip to the ground" (emphasis added)).  Compare People v. Anderson, 246 N.E.2d 508, 509 (N.Y. 1969) (holding abandonment not proved where defendant "dropped a tin box' just prior to the police officer's making contact with the defendant's hand" as "[t]here is no proof that the defendant threw it away or attempted to dispose of it in any manner which might have manifested the requisite intention to abandon" and the police officer "picked up the box so soon after it had been dropped that it is impossible to determine whether or not the defendant, if given the opportunity, would have picked up the box himself"), with People v. Brown, 333 N.Y.S.2d 791, 793 (N.Y. App. Div. 1972) (distinguishing Anderson on ground that, here, "it does not appear that defendant inadvertently dropped the package or that he would have retrieved it if the officer had not immediately interceded").  Although the result here is not as clear as in a case in which the suspect discards an item and moves away from it, nevertheless, the evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's implicit conclusion that appellant surrendered his expectation of privacy in the tissue and its contents

when he dropped them to the ground.  Appellant argued at most that he intended to step on the item rather than to retrieve it and maintain it in a useable condition.

For these reasons we hold the evidence, viewed in the light most favorable to the Commonwealth, supported the conclusion that appellant abandoned the tissue and that the police officer's recovery of the tissue and its contents was not an unreasonable search or seizure.  Thus, we affirm.

Affirmed.

Annunziata, J., dissenting.

I respectfully dissent from the majority opinion on the ground that the facts of this case establish Mayfield maintained a subjective and legitimate expectation of privacy in the tissue paper and that the warrantless search of the tissue paper, therefore, violated Mayfield's Fourth Amendment right to be free from unreasonable searches and seizures.

Viewed in a light most favorable to the Commonwealth, the evidence establishes that Officers Pugh and Cary observed Mayfield standing in a parking lot in a known drug area at 10:00 p.m. Mayfield was shuffling tissue paper in his hand. As the officers approached Mayfield, he "threw" or "tossed" the tissue paper behind him. The tissue paper landed "right behind [Mayfield's] foot." In response to defense counsel's question, "And then [Mayfield] actually also went to step on [the tissue], didn't he," Officer Cary stated, "Yes, ma'am, he did." Officer Cary retrieved the tissue paper before Mayfield stepped on it. The officer searched the tissue paper and recovered cocaine.

The majority opinion appears to acknowledge that Mayfield manifested a subjective intent to retain a privacy interest in the tissue paper when he threw it to the ground, a conclusion with which I agree; Mayfield tried to step on the tissue paper,[1] a clear indication that he wanted to keep the police from retrieving it and discovering its contents. See Smith v. Ohio, 494 U.S. 541, 543-44 (1990) (holding that "a citizen who attempts to protect his private property from inspection . . . clearly has not abandoned that property"); cf. United States v. Cofield, 272 F.3d 1303, 1307 (11th Cir. 2001) (per curiam) (finding abandonment where defendant placed suitcase on the ground, disclaimed ownership, and walked away).

---

[1] The majority diminishes the importance of Mayfield's attempt to conceal the tissue paper by stating that such evidence, viewed in a light most favorable to the Commonwealth, does not establish that Mayfield wanted "to retrieve it and maintain it in a useable condition." However, one can possess unusable property and still maintain a privacy interest in that property. See State v. Zindros, 456 A.2d 288, 296-97 (Conn. 1983), cert. denied, 465 U.S. 1012 (1984).

The majority thereafter concludes, however, that Mayfield's subjective expectation of privacy was not objectively reasonable or one that society is willing to recognize as legitimate because he "dropped it in a quasi-public place and [because] . . . any passerby could have discovered it and picked it up . . . ." I do not concur in the conclusion that Mayfield's expectation of privacy in the tissue paper was not objectively reasonable simply because he dropped it in a quasi-public place. As Professor LaFave has noted,

> It should not be assumed . . . that in every instance in which a defendant relinquished possession or control, albeit briefly, an abandonment for Fourth Amendment purposes has occurred. The fundamental question is whether the relinquishment occurred under circumstances which indicate he retained no justified expectation of privacy in the object. . . . Even when the place where the object is put is somewhat more public . . . , there still may be a justified expectation of privacy.

1 Wayne R. LaFave, Search and Seizure § 2.6(b), at 577-78 (3d ed. 1996); Katz v. United States, 389 U.S. 347, 351 (1967) (noting that what one "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected"); see also O'Shaughnessy v. State, 420 So. 2d 377, 378 (Fla. Dist. Ct. App. 1982) ("Not every physical separation of the person and the object he is carrying or wearing constitutes an abandonment of such property and a loss of rights protected by the Fourth Amendment.").

Determining whether an expectation of privacy is one society is prepared to recognize as legitimate requires "reference to . . . understandings that are recognized and permitted by society." Rakas v. Illinois, 439 U.S. 128, 143 n.12 (1978); see also Robbins v. California, 453 U.S. 420, 428 (1981) (plurality opinion) (stating that "[e]xpectations of privacy are established by general social norms"); 1 LaFave, supra, § 2.1(d), at 391 ("[C]ourts, when they have considered the matter, seem to have drawn upon the customs and sensibilities of the populace in determining what expectations of privacy are constitutionally reasonable." (internal quotations omitted)). In our decision in Sheler v. Commonwealth, 38 Va. App. 465, 566 S.E.2d 203 (2002),

for example, we held that the police search of Sheler's shoe violated his legitimate expectation of privacy. We reached this conclusion by comparing the police conduct to everyday social norms.

> Generally, people do not expect other persons will seize the shoes or other garments they wear and manipulate them to explore and expose unseen features. By seizing the shoe, the detective was able to manipulate the shoe and expose areas of the shoe not readily seen. *This conduct far exceeded the contact Sheler and other citizens might reasonably expect from the police or other members of the public.*

Id. at 477, 566 S.E.2d at 208-09 (emphasis added).

In People v. Loveless, 400 N.E.2d 540 (Ill Ct. App. 1980), the Illinois Court of Appeals conducted a similar analysis. There, a police officer picked up a coat Loveless left on a table in a club. Id. at 541. Loveless saw the officer begin to pick up the coat and said, "'Hey man, that's my coat.'" Id. The officer continued to pick up the coat, and envelopes containing marijuana dropped out. Id. In reviewing the search of the coat, the court initially concluded that Loveless had no reasonable expectation of privacy in it because "[a]n individual who places a coat on a table in a busy tavern must reasonably expect that that coat will be touched or handled by an employee or by any member of the public who desires to use or sit at that table." Id. at 542. However, the court found that when Loveless said, "Hey man, that's my coat," he manifestly voiced an objection to the police officer's actions. Id. Thus, by "Loveless' effort to stop the interference with his obviously unabandoned personal property," he "regain[ed] some degree of privacy with regard to it, . . . one which" the court found "society views as both reasonable and justifiable." Id. at 543. Referring to norms of social conduct, the court concluded that Loveless's expectation of privacy in his coat was reasonable and legitimate after he objected to police interference with it. "Loveless' reaction to [the officer's] picking up of his coat is not unexpected, nor in our view, unreasonable. Society expects one to object when he discovers a

nonconsensual interference with his personal property. Society equally expects the interference to cease once a justifiable objection to that interference is made." Id. at 542.

Applying the reasoning of Sheler and Loveless to the facts of this case, I would conclude that Mayfield's expectation of privacy in the tissue paper was legitimate. Even though Mayfield threw the tissue paper to the ground, it landed directly next to his foot. He did not walk away from the tissue paper. Indeed, Mayfield immediately attempted to step on the tissue paper, an obvious manifestation of his objection to outside interference with it.[2] See Loveless, 400 N.E.2d at 542. Made thus aware of Mayfield's objection to interference with the tissue paper,[3] a reasonable passerby would desist from any attempt to seize it. Id. ("Society . . . expects the interference to cease once a justifiable objection to that interference is made."). Any such attempt would fall outside the "social norms" and societal "understandings" to which we are accustomed. Rakas, 439 U.S. at 143 n.12; Robbins, 453 U.S. at 428. Mayfield could therefore reasonably expect the police officer would refrain from seizing the property relative to which he evidenced an intent to keep private and under his control. The police officer's conduct to the contrary "far exceeded the contact" social norms would deem permissible under Fourth Amendment guarantees. Sheler, 38 Va. App. at 477, 566 S.E.2d at 209. Accordingly, I would

---

[2] Mayfield's attempt to step on the object is part of the totality of circumstances that must be considered in determining whether the warrantless seizure was unreasonable. See Commonwealth v. Ealy, 12 Va. App. 744, 750-51, 407 S.E.2d 681, 685 (1991). Contrary to this settled principle, Mayfield's attempt to conceal the tissue by using his foot to step on it is excluded from the majority's calculus as evidenced by the cases it cites in support. The decisions in Vines v. State, 237 S.E.2d 17, 18 (Ga. Ct. App. 1977); Lee v. United States, 22 F.2d 29, 30 (D.C. Cir. 1954); and State v. Jackson, 824 So. 2d 1124, 1125-26 (La. 2002), each involve defendants who simply tossed or dropped an object to the ground with no attempt to conceal the object.

[3] The evidence establishes that it was evident to the police officer that the tissue paper landed directly next to Mayfield's foot, that he remained stationary and in close proximity, and that he immediately tried to step on it.

hold that Mayfield's subjective expectation of privacy in the tissue paper was also objectively reasonable and legitimate and that the trial court erred in denying the motion to suppress.