## Richmond

JOHN EDWARD HAWLEY v. COMMONWEALTH OF VIRGINIA.

October 11, 1965.

Record No. 6113.

Present, Spratley, Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*Frederick T. Stant Jr. (Thomas W. Moss, Jr.; Roger T. Williams; Stant, Moss, Rafal & Stokes,* on brief), for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

GORDON, J., delivered the opinion of the court.

The defendant, John Edward Hawley, asks us to set aside his conviction of statutory burglary because the conviction rested on illegally obtained evidence that he had possession of the stolen property shortly after the crime was committed. This evidence, the defendant says, was procured by an unreasonable search of a Chrysler automobile, in violation of his constitutional rights, and was therefore inadmissible.

On November 15, 1963, a dwelling in the city of Chesapeake, Virginia, was broken into, and United States coins (including currency and proof coins) and whiskey were stolen.

On November 16, 1963, Hawley arrived at a motel in Salisbury, Maryland, driving a Chrysler automobile, and he engaged a room in the motel, registering under a false name (Mark Richmond) and giving a false address. Before checking out on the same day, Hawley attempted to arrange for the safekeeping of coins in his possession; he asked the manager to place the coins, which he said totaled approximately $2,000, in the motel safe. The manager refused; but he acceded to Hawley's alternative request that he be permitted to park the automobile in front of the office. Hawley drove the automobile to that place and departed, telling the manager that he would return in three or four days to pick up the automobile.

The automobile remained eight or ten days on the motel premises, where it had been parked by Hawley. Then, the manager of the motel called the Salisbury police, and in response Sergeant Barnett came to the motel to investigate.

Sergeant Barnett obtained the name of the owner of the Chrysler by transmitting the license number to the Virginia Department of Motor Vehicles and receiving return advice. Apparently, he learned that the automobile was owned by one Melvin Blake.

Later in the day, Sergeant Barnett received information that the Chrysler was believed to have been involved in a burglary in the city of Chesapeake. A person who identified himself as a detective of the Chesapeake police force called Sergeant Barnett to give him this information. (When he testified at the trial of this case, Sergeant Barnett could not recall the name of the detective who called him, and he admitted that he had never talked to him before.)

The Chrysler was towed from the motel to the police headquarters in Salisbury. It was entered through an unlocked door, and the officers found under the right front seat a cigar box containing seven sets of proof coins and a bottle of whiskey, part of which had been consumed. Before entering the automobile, Sergeant Barnett saw, by looking through the window, the packages of proof coins and the whiskey.[1] Then, the trunk of the automobile was opened by force and a large quantity of currency and proof coins was found in bags or in packages in the trunk.[2] A search warrant was not obtained.

The Chesapeake police attempted to locate Hawley in the vicinity of Chesapeake and in other states and regions during the five-month period beginning November 16, 1963. He was found and arrested in Norfolk, Virginia, on April 8, 1964, and he was later indicted for the burglary in Chesapeake.

There is no evidence that during the five-month period, while Hawley was a fugitive, he returned to Salisbury or made any effort to obtain the Chrysler or to ascertain its whereabouts.

At Hawley's trial, he was identified as the person who left the Chrysler at the motel in Salisbury, and the currency and proof coins were identified as those stolen on November 15, 1963 in Chesapeake. Hawley did not testify, and no evidence was offered to explain his possession of the stolen articles.

We are compelled to follow the federal rule that evidence obtained in violation of the Fourth Amendment to the United States Constitution is inadmissible in criminal trials. *Mapp* v. *Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.ed.2d 1081 (1961) (overruling *Wolf* v. *Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.ed. 1782 (1949)); *Ker* v. *Cali-*

---

[1] There is substantial disagreement between counsel whether Sergeant Barnett saw, or could have seen, the proof coins through the window. He testified that "7 of these proof coins were under the front seat in a cigar box; 7 packs of them had not been opened; part of a fifth of whiskey"; and that he could see them through the glass from the outside. Defense counsel argues that the record does not support a finding that the proof coins were visible. The exhibits tend to support his position—the proof coins included in the exhibits are inside brown paper envelopes, which are not transparent and are identified only by the printed return address "Treasury Department, United States Mint, Philadelphia 30, Pa.".

[2] The chronology, as stated above, of the events leading to the seizure—beginning with Sergeant Barnett's visit to the motel and ending with the opening of the trunk of the automobile—conforms to that set forth in the defendant's brief and conforms substantially to that set forth in the Commonwealth's brief. On the other hand, it might be properly concluded from the evidence that Sergeant Barnett inspected the inside of the automobile either when he was at the motel or at police headquarters before the call from the Chesapeake detective. Under our view of the merits of the issue under discussion, the chronology is unimportant.

*fornia,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.ed.2d 726 (1963). By *Mapp* and *Ker,* the Fourth Amendment and the accompanying federal exclusionary rule (relating to illegally seized evidence) have been made applicable to the states.[3]

It is settled, however, that the right afforded to persons by the Fourth Amendment—to be secure against unreasonable searches and seizures of "their" persons and property—does not extend to abandoned premises or property. *Abel* v. *United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.ed.2d 668 (1960). So, if the Chrysler had been abandoned by Hawley, the search of the automobile and the seizure of the stolen coins and whiskey did not violate any right afforded him under the Fourth Amendment, and the seized evidence was properly admitted at his trial for statutory burglary.

In considering the question of abandonment, we should first notice Hawley's interest in the Chrysler. The record does not disclose the arrangements, if any, between the owner of the automobile and Hawley respecting Hawley's use of the automobile. The evidence fails to show that Hawley had the owner's permission to possess and use the automobile; it shows only that he possessed and drove the automobile continually or from time to time during the period April 15, 1963-November 16, 1963 and, in particular, in Chesapeake on the day of the crime and in Salisbury on the next day (November 16, 1963). Melvin Blake (who has been mentioned as the apparent owner of the automobile and who testified in this case) did not say that he gave Hawley permission to use the automobile or that permission was given by any other person. Accordingly, there was no proof that Hawley, when he drove the automobile to Salisbury on November 16, 1963 and left it there, had the right to use and occupy the vehicle. Nevertheless, for the purpose of discussing the issue of abandonment, we will assume that Hawley possessed the automobile on November 16, 1963 with the owner's permission.

Defense counsel does not base Hawley's constitutional right or "standing" to object to the search on a claim of ownership of the automobile. He relies upon *Jones* v. *United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.ed.2d 697 (1960), which held that an invitee of the tenant

---

[3] The court in *Ker* recognized one difference in the rules applicable to the federal and state courts, in that evidence may be inadmissible in federal courts under rules laid down through the supervisory authority of the Supreme Court, whereas the states are not "precluded from developing workable rules governing arrests, searches and seizures, to meet 'the practical demands of effective criminal investigation and law enforcement' ", and evidence procured under such state rules is not inadmissible provided constitutional tests are met.

of an apartment, which was searched by police officers, had standing to object to the admission of seized articles.[4]

We have, then, at most the question of abandonment of the mere right to possession, and not the abandonment of ownership.

Admittedly, intention is a prime factor in determining whether there has been an abandonment. And courts must determine intent from what the actor said and did; intent, though subjective, is determined from the objective facts at hand.

In view of the facts of this case, the finding that Hawley abandoned his right to possess the Chrysler is inescapable. He left it in Salisbury, with stolen goods inside, and fled. He was apprehended some five months later and (insofar as the record shows) never attempted to retrieve the automobile or to find out whether it had been moved from the place where he left it.

True, there is evidence in the record that Hawley did not intend to abandon any possessory right in the automobile when he left the motel on November 16. He parked the automobile in a place where it could be observed, obviously for the preservation of its contents. But, significantly, he told the manager that he would return in three or four days. Accordingly, if we recognize Hawley's intention to return when he left the motel, from what he said and did, we must recognize from the same evidence his change of intention at some time during the three or four day period. And the only hypothesis consistent with the evidence is that he determined to abandon any right in the automobile during that period, and that the abandonment occurred before the search, which was made at least eight days after Hawley's departure.

*Feguer* v. *United States*, 302 F.2d 214 (8th Cir. 1962), *cert. denied*, 371 U.S. 872, 83 S.Ct. 123, 9 L.ed.2d 110 (1962), though concerned with the abandonment of a rented room rather than an automobile, strongly supports a finding of abandonment in this case. The trial court admitted evidence seized as a result of a search on July 12, without a search warrant, of a room rented by the defendant in Dubuque, Iowa. The defendant had paid rent through July 14,[5] and when the officers

---

[4] The decision in *Jones* was based on the exclusionary rule set forth in Rule 41(e) of the Federal Rules of Criminal Procedure, but the opinion deals also with standing to object under the Fourth Amendment.

[5] Feguer's right to occupy the room at the time of the search may be contrasted with Hawley's right to possession of the Chrysler, in that Feguer had the clear right to occupy the room by virtue of payment of rent for a period extending after the day of the search. The evidence in this case does not indicate that any right of Hawley to possession of the Chrysler was based upon a consideration paid to the owner.

searched the room the lights were on. The search was held not violative of the defendant's rights under the Fourth Amendment because the evidence showed that the room had been abandoned by the defendant on the night of July 11, when he left Dubuque. In reaching the conclusion that the room had been abandoned, the court properly considered the defendant's actions after he left the room on July 11. Also, the court rejected the defendant's argument that since the officers, when they entered the room, did not have reasonable cause to believe it had been abandoned by the defendant, the search and seizure were illegal when made. Because the room had been abandoned in fact, "the room's search could not possibly have violated any constitutional right of the defendant". See 302 F.2d 214, 250.[6]

Having found that Hawley had abandoned any right to possess the automobile when the search was made, we need not consider alternative grounds for upholding the search as not violative of the Fourth Amendment.

■ The only other issue raised by the defendant is whether the evidence, considered as a whole and including the evidence procured through the search, was sufficient as a matter of law to sustain the jury verdict of guilty and the court's judgment of conviction. In dealing with this issue, we will first amplify in some respects and summarize the facts already stated.

Hawley was convicted of statutory burglary on November 15, 1963 of a dwelling in Chesapeake, occupied as a residence by Dr. and Mrs. J. D. Woodley and used also as the doctor's office. There was direct evidence that between the hours of 8:30 a.m. and 10:30 p.m. on that day, a panel of the front door was broken by force, the dwelling was entered, and coins, proof coins and whiskey were stolen.

There was further direct evidence that Hawley was in Chesapeake or environs on the day of the crime. A witness, who estimated that her home was approximately six miles from Dr. Woodley's home, saw Hawley at her home at about 8:00 a.m., at lunch time and during

---

[6] Several Virginia cases are cited in the defendant's reply brief to support the position that Hawley had not abandoned the automobile in question: *Talley* v. *Drumheller,* 143 Va. 439, 130 S.E. 385 (1925); *County School Board* v. *Dowell,* 190 Va. 676, 58 S.E.2d 38 (1950); and *Lindsey* v. *Clark,* 193 Va. 522, 69 S.E.2d 342 (1952). These cases, however, deal with the abandonment of owned property and the passage of title from one person to another person as a result of the claimed abandonment. They do not relate to the question with which we are concerned, whether Hawley had abandoned his right to possession of the automobile in question. Accordingly, these cases need not be discussed, even though (assuming *arguendo* that Virginia law is applicable) they would not necessarily preclude a finding that title, if possessed by Hawley, had been abandoned.

the evening, but she did not see him during his working hours or during the period from 7:00 p.m. to 8:15 p.m.

As already stated, Hawley arrived in Salisbury, Maryland, on the next day, with the stolen articles in his possession, registered at a motel under a false name and false address, checked out of the motel on the same day and was a fugitive for approximately five months before he was arrested. No evidence was offered in this case to explain Hawley's possession of the stolen articles.

This proof constituted *prima facie* evidence of the statutory burglary with which Hawley was charged and, therefore, was sufficient as a matter of law to support the verdict of guilty and the judgment of conviction. *Fout* v. *Commonwealth*, 199 Va. 184, 98 S.E.2d 817 (1957).

*Williams* v. *Commonwealth*, 193 Va. 764, 71 S.E.2d 73 (1952), relied upon by the defendant, is not authority to the contrary. In that case, we held that bare evidence of the possession of stolen goods was not sufficient to support a conviction of storebreaking, where there was no evidence of breaking by force. Here, there was direct proof of breaking by force.

*Affirmed.*