COURT OF APPEALS OF VIRGINIA

Present:  Judges Bumgardner, McClanahan and Senior Judge Coleman
Argued at Salem, Virginia


KEVIN MAURICE THOMAS

                                             MEMORANDUM OPINION[*] BY
v.        Record No. 0524-03-3              JUDGE SAM W. COLEMAN III
                                                  JUNE 29, 2004
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                            Charles J. Strauss, Judge

        Jesse W. Meadows III, for appellant.

        Leah A. Darron, Assistant Attorney General (Jerry W. Kilgore,
        Attorney General, on brief), for appellee.


        Kevin Maurice Thomas (Thomas) was convicted of two counts of possessing stolen

property with altered serial numbers in violation of Code § 18.2-96.1 and two counts of

concealment of stolen property in violation of Code § 18.2-108.  On appeal, Thomas contends

the trial court erred by refusing to suppress evidence seized by the police when they searched the

U-Haul truck he had rented and left stuck on the property of Olivia Kelly, Thomas' aunt.

Thomas argues that the search violated his privacy rights as protected by the Fourth Amendment

of the United States Constitution.  Finding no error warranting reversal, we affirm.

        Ordinarily, in reviewing a trial court's ruling on a motion to suppress, this Court views

the evidence in the light most favorable to the prevailing party, the Commonwealth in this

instance.  See Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994).

We examine the records of both the suppression hearing and the trial to determine whether the

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

evidence was lawfully seized.  See DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542 (1987).  "In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'"  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted).  In this case, however, the facts which are relevant to the suppression motion are uncontested.  Therefore, we review only the legal question of whether the search of the truck violated defendant's constitutional rights.  See Lawrence v. Commonwealth, 40 Va. App. 95, 100, 578 S.E.2d 54, 56 (2003).

Because our legal review is de novo, Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999), we may affirm on a legal ground the trial court did not reach.  See Frye v. Commonwealth, 231 Va. 370, 389, 345 S.E.2d 267, 281 (1986) (stating that "we will not reverse a trial court's ruling when, as here, the correct result has been reached, although the court may have assigned the wrong reason for its ruling") (citing Thims v. Commonwealth, 218 Va. 85, 93, 235 S.E.2d 443, 447 (1977)).  See also Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313 (1992).  But, in affirming on a ground other than that relied upon by the trial court, we necessarily limit our review and ruling to those facts the defendant does not contest because the trial court made no specific factual findings upon which our legal conclusions rely.  See Sheler v. Commonwealth, 38 Va. App. 465, 475 n.1, 566 S.E.2d 203, 207 n.1 (2002) (noting the impropriety in using the "right result wrong reason" rule when additional fact finding is necessary).

The uncontested facts are that on the night of September 29, 2001, two motorcycles were stolen from the parking lot of a motel in Danville, Virginia.  Defendant rented a truck from a U-Haul establishment in Martinsville, Virginia on November 30, 2001.  Pursuant to the rental agreement, which defendant signed, the rental period expired on December 3, 2001.  The rental

agreement further stated: "Any operation of equipment outside of time agreed and allowed mileage stated is without U-Haul consent." The rental contract also prohibited defendant from using the truck in "any illegal activity."

On December 12, 2001, Pittsylvania County police officers received information that stolen motorcycles could be found inside a U-Haul truck located at 1808 Wateroak Road in Callands, Virginia in Pittsylvania County. Acting upon this information, Deputies Suzanne Divine and Scott Campbell of the Pittsylvania County police went to the Callands address and found a U-Haul truck stuck in the mud in the backyard of the Wateroak Road residence. The officers spoke with Olivia Kelly, the owner of the residence. Kelly stated she did not know who owned the truck or how it had gotten onto her property. She said she discovered the truck stuck in her yard when she returned from an out-of-town trip on December 2, 2001. Kelly told the officers she did not possess any keys to the vehicle. Upon request from the officers, Kelly signed a consent form granting the officers permission to search the U-Haul truck.

The police officers removed the locking bolt from the back door of the U-Haul truck and opened the rear compartment. Inside were six motorcycles, including the two motorcycles that had been stolen from the motel parking lot in Danville. While the police were examining the motorcycles, defendant arrived on the scene. He claimed the motorcycles belonged to him and he had documentation to prove his ownership.

At the suppression hearing defendant testified that he had parked the U-Haul truck on Kelly's property on November 30, 2001. He left Virginia a few days later, going to Ohio for a doctor's appointment. He did not return to the U-Haul truck until December 12, 2001. He had not contacted the U-Haul company about extending the term of the rental period, but he assumed from past experience that he could merely pay late charges when he returned the vehicle. Defendant testified that his cousin, DeMario Craighead, who lived with Kelly, his grandmother,

at the Wateroak residence, was with defendant when he rented the U-Haul truck and when the vehicle got stuck in the mud on Kelly's property. Defendant said that Craighead was the only person other than him with any right or access to the truck. Craighead testified that the key to the U-Haul truck had been left hanging on the wall in Kelly's house. No evidence at the motion hearing or at trial proved that Kelly knew the keys were there; to the contrary, the police testified at the motion hearing that Kelly said she did not have or know where the keys were.[1]

The trial court ruled that Kelly lacked authority to consent to the search of the truck. However, in denying defendant's motion to suppress, the court found that defendant had no expectation of privacy in the U-Haul truck because his use of the truck for illegal activity – the concealment of stolen property – was outside the terms of the rental agreement. The dispositive issues on appeal are whether defendant had a reasonable expectation of privacy in the U-Haul truck at the time of the search and whether Kelly provided the police with valid consent to the search. Because we find that defendant abandoned the U-Haul truck on Kelly's property, we conclude that he had no such expectation.

## I. Expectation of Privacy

The Fourth Amendment

> "protects people, not places." In order to effectuate the [F]ourth [A]mendment guarantees, the Supreme Court established the "exclusionary rule" which prevents evidence obtained in violation of the [F]ourth [A]mendment from being used against an accused. Yet, the protections of the exclusionary rule are only available to individuals whose [F]ourth [A]mendment rights have been violated. Thus, before affording the exclusionary rule protections to a defendant, a court must determine whether, based on the totality of the circumstances, the defendant "objectively had a reasonable expectation of privacy at the time and place of the disputed search."

---

[1] At the hearing, defendant elicited on cross-examination the police testimony that Kelly did not have the U-Haul keys. He later argued from that fact and others that Kelly had no apparent authority over the truck and therefore could not consent to its search.

Commonwealth v. Ealy, 12 Va. App. 744, 750-51, 407 S.E.2d 681, 685 (1991) (citations omitted).

"An individual who has a legitimate expectation of privacy in an object nevertheless may abandon that expectation, thereby forfeiting 'all standing to complain of its warrantless search and seizure.'" Al-Karrien v. Commonwealth, 38 Va. App. 35, 42-43, 561 S.E.2d 747, 751 (2002) (quoting Weschler v. Commonwealth, 20 Va. App. 162, 173, 455 S.E.2d 744, 749 (1995)). "[T]he right afforded to persons by the Fourth Amendment – to be secure against unreasonable searches and seizures of 'their' persons and property – does not extend to abandoned premises or property." Hawley v. Commonwealth, 206 Va. 479, 482, 144 S.E.2d 314, 316 (1965) (citing Abel v. United States, 362 U.S. 217 (1960)).

> Generally speaking, in Fourth Amendment analysis, the concepts of abandonment and lack of expectation of privacy go hand in hand, as the proverbial two sides of the same coin. Indeed, in Fourth Amendment parlance, the term "abandonment" is often a shorthand reference for the concept of lack of expectation of privacy.

Powell v. State, 776 A.2d 700, 710 (Md. Ct. Spec. App. 2001).

Abandonment in the context of the Fourth Amendment "is different from the property law concept of abandonment. A person may retain a property interest in personal property while, at the same time, relinquishing his or her reasonable expectation of privacy in that property." Commonwealth v. Holloway, 9 Va. App. 11, 18, 384 S.E.2d 99, 103 (citation omitted). "[I]ntention is a prime factor in determining whether there has been an abandonment." Hawley, 206 Va. at 483, 144 S.E.2d at 317. "An intent to retain or abandon an expectation of privacy is determined by objective standards and 'may be inferred from words, actions and other objective facts.'" Hardy v. Commonwealth, 17 Va. App. 677, 680, 440 S.E.2d 434, 436 (1994) (citation omitted). The relevant inquiry is whether, at the time of the search, a person's words and

actions, or other known objective facts, demonstrate his or her intent to abandon a privacy interest in the property in question.

> To demonstrate abandonment, the government must establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized. Because this is an objective test, it does not matter whether the defendant harbors a desire to later reclaim an item; we look solely to the external manifestations of his intent as judged by a reasonable person possessing the same knowledge available to the government agents.

United States v. Basinski, 226 F.3d 829, 836 (7th Cir. 2000) (citations omitted). Accord United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997); United States v. Perkins, 871 F. Supp. 801, 803 (M.D. Pa. 1995). See 1 William E. Ringel, Searches & Seizures, Arrests and Confessions § 8:20 (2d ed. 2001). "In order to determine whether a pre-search abandonment has occurred, the flow of information considered stops at the moment the police officer" began the search. United States v. Rem, 984 F.2d 806, 811 (7th Cir. 1993).

Thus, the question is not whether at the time of the search, defendant retained a property interest in the U-Haul truck, given his use of the vehicle for an illegal purpose in violation of the rental contract and outside the negotiated rental period. See United States v. Boruff, 909 F.2d 111, 117 (5th Cir. 1990) (holding that defendant had no standing to challenge search of vehicle rented by his girlfriend for his drug smuggling operation). Cf. McCary v. Commonwealth, 36 Va. App. 27, 37, 548 S.E.2d 239, 244 (2001) (noting "many jurisdictions hold that a hotel or motel guest who stays beyond the rental period waives, 'by . . . deed,' his Fourth Amendment rights and loses his expectation of privacy in the room and its contents"). Rather, we determine whether the uncontested, objective facts known to the police officers would lead a reasonable person to believe that the U-Haul was abandoned at the time the officers began the search of the truck.

- 6 -

That question is controlled by the Virginia Supreme Court's analysis in Hawley v. Commonwealth, 206 Va. 479, 144 S.E.2d 314 (1965).  In Hawley, the defendant parked a motor vehicle near the office of a motel upon checking out of his room.  The defendant told the motel manager, who permitted the defendant to leave the car on the motel's property, that he would return in three to four days to retrieve the automobile.  The motel manager called the police when the defendant had failed to return for the car for eight to ten days.  Id. at 480, 144 S.E.2d at 315. The police towed the vehicle, searched it, and found stolen property.  The defendant remained a fugitive for five months thereafter.  Id. at 482, 144 S.E.2d at 316.  Concluding that the defendant had abandoned any right to possess the vehicle at the time the search was made, the Court observed:

> True, there is evidence in the record that Hawley did not intend to abandon any possessory right in the automobile when he left the motel . . . .  He parked the automobile in a place where it could be observed, obviously for the preservation of its contents.  But, significantly, he told the manager that he would return in three or four days.  Accordingly, if we recognize Hawley's intention to return when he left the motel, from what he said and did, we must recognize from the same evidence his change of intention at some time during the three or four day period.  And the only hypothesis consistent with the evidence is that he determined to abandon any right in the automobile during that period, and that the abandonment occurred before the search, which was made at least eight days after Hawley's departure.

Id. at 483, 144 S.E.2d at 317.  See also United States v. Gulledge, 469 F.2d 713, 715 (5th Cir. 1972) (U-Haul trailer, which gas station attendant allowed defendant to leave on the property for two to three days, was abandoned for Fourth Amendment purposes when defendant failed to return for it for ten days).

Indeed, the objective facts and circumstances presented to the police in this case were more indicative of abandonment than those considered in Hawley.  The officers went to the Wateroak Road residence in response to information that a U-Haul truck containing stolen

- 7 -

motorcycles could be found on the property. When they arrived there, the officers found a U-Haul truck, mired to the axles in mud, on the property. Divine and Campbell questioned Kelly, the owner of the property, regarding the truck. Although Kelly had noticed the vehicle on her property ten days before, Kelly claimed no knowledge of the identity of the driver of the vehicle, why it was left on her property, or how the vehicle became stuck on her property. Kelly said she had no keys to the vehicle. These objective facts and circumstances justified a reasonable person in the position of the officers to conclude that the vehicle had been abandoned.

Because our focus is upon whether defendant had abandoned his expectation of privacy in the truck at the time of the search, see Hawley, 206 Va. at 484, 144 S.E.2d at 318, we do not consider defendant's appearance on Kelly's property after the officers had entered the U-Haul truck, his subsequent claim of rightful ownership to motorcycles contained in the truck, or his leaving behind the keys to the truck in Kelly's home unbeknownst to her. See Basinski, 226 F.2d at 836. These factors either were unknown to the officers, or had not yet occurred, at the time of the search.

## II.  Consent

Because we hold that defendant lacked an expectation of privacy in the rental truck at the time and place of the search, we do not address the question whether Kelly had the authority to consent to the search.

For the foregoing reasons, we affirm the trial court's denial of the motion to suppress the evidence seized from the officers' search of the U-Haul truck.

Affirmed.