COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


ANTONIO D. WATTS

                                                            OPINION BY
v.        Record No. 2644-09-1               JUDGE LARRY G. ELDER
                                                     NOVEMBER 2, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jerrauld C. Jones, Judge[1]

Lenita J. Ellis for appellant.

Gregory W. Franklin, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Antonio D. Watts (appellant) appeals his bench trial convictions for possession of

cocaine in violation of Code § 18.2-250 and possession of marijuana in violation of Code

§ 18.2-250.1.  On appeal, he contends the trial court erroneously concluded the search that

yielded the cocaine and marijuana did not violate his Fourth Amendment rights.  He also

contends the evidence was insufficient to support his convictions because it did not prove he

constructively possessed the drugs found hidden in the car he was driving.  We hold the trial

court's denial of the motion to suppress was error.  Thus, we reverse appellant's convictions and

remand for further proceedings consistent with this opinion.

I.  BACKGROUND

On December 8, 2007, uniformed Norfolk Police Officer S.A. Maxey was patrolling a

Norfolk Redevelopment & Housing Authority (NRHA) property in his marked police vehicle

---

[1] Judge Everett C. Martin, Jr., presided over the hearing on the motion to suppress.

when he saw a gold car with a peeling inspection sticker, a missing front license plate, and a temporary rear license tag. As Officer Maxey watched, the vehicle left the NRHA property, pulled into the driveway and parking area of a private two- or four-unit apartment building on a public street adjacent to the NRHA property, and came to a stop.

Officer Maxey described the area where the gold car parked as "a giant slab of concrete" between the apartment building, on one side, and the public street and sidewalk, on the other side. He said the slab contained "no actual marked [parking] spots" but permitted numerous vehicles to park in a fashion so as not to block any other vehicles parked on the slab. At the time the gold car pulled into the lot, the vehicles already parked in the lot "were all facing as if they pulled in from the street facing the [apartment] building," such that they were perpendicular to the building and the street. The driver of the gold car parked his vehicle in the same fashion. The manner in which the driver parked was not "blocking another car," but Officer Maxey described the gold car as "actually . . . occupying one of the [unmarked] spots of the building," thereby preventing anyone else from being able to park in the location in which it was parked.

Officer Maxey observed the vehicle's driver, appellant, exit the car and walk toward the apartment complex and away from the street. He was "walking normally" and did not "appear[]" to "know [Officer Maxey] [was] there." Officer Maxey had not activated his lights or siren at that time and believed appellant had stopped in the parking lot of the private apartment building of his own accord. Officer Maxey then stopped his vehicle on the public street adjacent to the apartment building and called out to appellant, who was near the gold car's front bumper and about ten feet away from Officer Maxey at the time. Appellant turned around and saw Officer Maxey. In what Officer Maxey described as a "consensual[]" encounter lasting about a minute, appellant indicated that the gold car was his, "that he had just bought it," and he admitted he did not have a driver's license. During that exchange, Officer Maxey observed a bulge in appellant's

- 2 -

front waistband area, which, based on his training and experience, he thought might be a firearm. When Maxey "told [appellant] [he] was going to pat him down for weapons," appellant fled, and Maxey was unable to keep up. Officer Maxey did not know appellant's name at that time.

When Officer Maxey returned to the vehicles after the foot chase, "several of the residents who lived at the units actually had came out [sic]." Officer Maxey "asked any of them if this [gold] car belonged to them or if they had seen the car in the driveway before, and they stated it did not [sic]." Officer Maxey did not know whether "any special decals or stickers [were] required for the residents to park there to show that it's exclusive to the residents of that building." Although appellant's counsel inquired whether Officer Maxey talked to anyone who "live[d] in," "own[ed] or manage[d]" the apartment complex to determine whether appellant's vehicle "could" or "should not" be there, Officer Maxey referred only to the inquiries he made to the residents who had come outside and made no mention of attempting to contact management.

At some point, Officer Maxey "ran the 30-day tag" on appellant's vehicle. He testified that "if [he] remember[ed] right, it came back to a car company," and he "wasn't sure if it hadn't been entered yet or not." Officer Maxey then determined that he was going to have appellant's vehicle towed because it was occupying a resident's spot, and he searched the vehicle pursuant to that plan. He saw no contraband in plain view in the vehicle; however, he immediately noticed the center console of the vehicle "looked strange" and "was not setting as if it was from the factory." Maxey testified that, based on his past experience, "usually when stuff" which "comes from the factory . . . bolted down" "is pried up like that, people use it as a place to hide or conceal different kinds of contraband." When he lifted the loose center console, he found a baggie containing crack cocaine and a baggie containing marijuana. Using some of the other contents of the car, including two photographs, Officer Maxey was able to confirm the driver

who fled from him was Antonio D. Watts, appellant, who was then charged with the instant offenses.

Appellant moved to suppress the drugs as the product of an unreasonable search. At a hearing on the motion, the Commonwealth argued appellant abandoned the vehicle when he fled and, thus, that he lacked standing to contest the search.[2] Appellant responded that the evidence failed to prove he abandoned the vehicle because he stopped the vehicle and got out before Officer Maxey approached him and no evidence contradicted that "it was parked in the manner in which [appellant] intended to park in the des[ti]nation he was driving to." The trial court denied the motion to suppress, stating only, "I don't think there was an unreasonable search here under all the circumstances."

At trial, the Commonwealth presented evidence in keeping with the above. Appellant testified, averring he did not tell Officer Maxey the car was his. He claimed he had borrowed the car from a friend and did not know the drugs were in the car. The trial court rejected appellant's testimony, convicting him of the charged offenses, and appellant noted this appeal.

## II. ANALYSIS

## A. MOTION TO SUPPRESS

On appeal of a ruling denying a motion to suppress, the appellant has the burden to show that the trial court's ruling constituted reversible error. See Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). Our examination of this issue "presents a mixed question of law and fact that we review *de novo* . . . . In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in

_____

[2] At trial and on brief, the Commonwealth also asserted the alternative contention that the warrantless search was a permissible inventory search on the facts of this case. However, the Commonwealth abandoned this claim at oral argument. Thus, we do not consider it in this appeal.

which the evidence was obtained [violated] the Fourth Amendment." Id. (citations omitted). The trial court is not required to make explicit findings of fact, and if it does not, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (en banc).

Although "the Fourth Amendment protects people, not places," from unreasonable searches and seizures, Katz v. United States, 389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed. 2d 576, 582 (1967), "[the] capacity to claim [its] protection . . . depends . . . upon whether the person . . . has a legitimate expectation of privacy in the invaded place [or object]," Rakas v. Illinois, 439 U.S. 128, 143, 99 S. Ct. 421, 430, 58 L. Ed. 2d 387, 401 (1978).

> An individual who has a legitimate expectation of privacy in an object nevertheless may abandon that expectation, thereby forfeiting "[the ability] to complain of its warrantless search and seizure." Although the individual whose property was searched bears the burden of proving a legitimate expectation of privacy in the item searched, the burden of proving abandonment is on the government.

Al-Karrien v. Commonwealth, 38 Va. App. 35, 42-43, 561 S.E.2d 747, 751 (2002) (quoting Wechsler v. Commonwealth, 20 Va. App. 162, 173, 455 S.E.2d 744, 749 (1995)).[3]

If a court determines the defendant had a right of privacy in the place searched and the Commonwealth failed to prove he abandoned that right, the defendant must then establish a prima facie case that a warrantless search of the item has occurred. United States v. Thompson, 409 F.2d 113, 117 (6th Cir. 1969); see Megel v. Commonwealth, 262 Va. 531, 534, 551 S.E.2d 638, 640 (2001) (noting warrantless searches are presumptively unreasonable). If the defendant

---

[3] Although we used the term "standing" in Wechsler, we have since noted the Supreme Court has held this issue is a component of "'substantive Fourth Amendment law [rather] than . . . standing.'" Sharpe v. Commonwealth, 44 Va. App. 448, 455 n.2, 605 S.E.2d 346, 349 n.2 (2004) (quoting Minnesota v. Carter, 525 U.S. 83, 88, 119 S. Ct. 469, 472, 142 L. Ed. 2d 373, 379 (1998)).

establishes the search was conducted without a warrant, the burden shifts to the Commonwealth to prove an exception to the warrant requirement. <u>Simmons v. Commonwealth</u>, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989).

Here, the trial court held without elaboration that "[it did not] think there was an unreasonable search . . . under all the circumstances." The Commonwealth does not dispute that appellant had a reasonable expectation of privacy in the vehicle when Officer Maxey first approached him, but it contends he abandoned that expectation when he fled from Officer Maxey and, thus, that the trial court correctly denied the motion to suppress.

We hold the evidence, viewed in the light most favorable to the Commonwealth, fails to support a conclusion that appellant abandoned the vehicle for Fourth Amendment purposes. Thus, we conclude the trial court erroneously denied the motion to suppress, and we reverse appellant's conviction and remand for further proceedings consistent with this opinion.

Settled principles provide that one lawfully in possession of a motor vehicle has a legitimate expectation of privacy in the vehicle and its contents. <u>See, e.g.</u>, <u>Hardy v. Commonwealth</u>, 17 Va. App. 677, 680, 440 S.E.2d 434, 436 (1994); <u>see also</u> <u>Arizona v. Gant</u>, 556 U.S. ___, ___, 129 S. Ct. 1710, 1720, 173 L. Ed. 2d 485, 497 (2009) (recognizing that although "a motorist's privacy interest in his vehicle is less substantial than in his home, the former interest is nevertheless important and deserving of constitutional protection" (citation omitted)). The Commonwealth does not contend otherwise in this case, and the facts support the conclusion that appellant had a reasonable expectation of privacy in the car when Officer Maxey approached him.

The Commonwealth avers appellant abandoned that reasonable expectation of privacy in the vehicle when he ran from Officer Maxey.

> Abandonment in the context of the Fourth Amendment is different from the property law concept of abandonment. A person

may retain a property interest in personal property while, at the same time, relinquishing his or her reasonable expectation of privacy in that property. A person's "intent to retain a reasonable expectation of privacy" [governs] whether the property has been abandoned . . . [and] is to be determined by objective standards. Such an intent may be inferred from words, acts and other objective facts.

The determination of this intent must be made after consideration of all relevant circumstances, but two factors are particularly important: denial of ownership and physical relinquishment of the property. . . .

\* \* \* \* \* \* \*

Whether relinquishing physical possession of personal property represents a voluntary abandonment of one's expectation of privacy depends upon the nature of the act and the circumstances surrounding the act. For example, a traveler in an airport who puts a suitcase down and walks a few steps away has not necessarily indicated an intent to abandon the suitcase. [United States v.] Jackson, 544 F.2d [407,] 410 [(9th Cir. 1976)]. On the other hand, the driver of an automobile who, when the vehicle caught on fire, pulled off to the side of the highway, got out of the vehicle, left the scene in another automobile and had not returned two to three hours later, was deemed to have abandoned and, therefore, forfeited his expectation of privacy in a briefcase in the trunk of the burning automobile. United States v. Oswald, 783 F.2d 663, 667 (6th Cir. 1986).

Commonwealth v. Holloway, 9 Va. App. 11, 18-19, 384 S.E.2d 99, 103 (1989) (quoting United States v. Kendall, 655 F.2d 199, 200 (9th Cir. 1981)) (citations omitted). "A finding of abandonment by the trial court is a determination which, 'even when arguably mixed with questions of law, is subject to attack only if [plainly wrong].'" Wechsler, 20 Va. App. at 173, 455 S.E.2d at 749 (quoting Holloway, 9 Va. App. at 19, 384 S.E.2d at 104).

Here, appellant neither denied ownership of the car nor relinquished physical control of it in the context of this case, and the additional circumstances also do not support a finding of abandonment. Officer Maxey testified that when he inquired whether the car belonged to appellant, appellant readily admitted rather than denied ownership.

Regarding physical control of the vehicle, Officer Maxey testified that appellant parked in the private parking lot in a fashion similar to the other cars parked there and that he exited the vehicle voluntarily and began walking away *before* Maxey approached and made appellant aware of his presence. No evidence established appellant left the car unlocked or left the keys behind.

The evidence failed to establish an additional element relevant to the "physical control" analysis—that appellant lacked authority to park where he did. Although Officer Maxey spoke with an unknown number of residents of the apartment building and none of them recognized the car,[4] Officer Maxey did not ask whether any of the residents had seen or recognized appellant himself, and because Officer Maxey did not know who appellant was at that time, he was unable to ask about appellant by name. The Commonwealth also did not establish that Officer Maxey spoke with all of the building's residents. Further, the gold vehicle bore temporary license tags, and appellant had told Officer Maxey he "just" bought the vehicle, thereby leaving open the hypothesis that appellant was authorized to park the car there and that the residents with whom Officer Maxey spoke simply were not yet able to recognize his new vehicle on sight.

The Commonwealth also offered no testimony that Officer Maxey spoke to the management concerning whether appellant was authorized to park there as a resident or a guest or that Officer Maxey saw any posted signs requiring the display of a parking permit which might not have been visible on appellant's car. Finally, Officer Maxey ran a check on the license plate number, but it "came back to a car company that there was no . . . actual, specific information that actually came back to it," which Officer Maxey thought could have been because appellant just bought the vehicle and had not yet had it placed in his name. As a result,

---

[4] Officer Maxey spoke only with the residents who came outside on their own after Maxey gave up his foot chase of appellant and returned to the parking area. He did not attempt to contact any residents who may have remained in their apartments.

Officer Maxey still had not learned appellant's name before he conducted the search and, thus, was unable to use it to assist him in determining whether appellant was authorized to park where he did. Under these circumstances, we hold the Commonwealth failed to meet its burden of proving that appellant had abandoned his expectation of privacy in the vehicle at the time Officer Maxey searched it.

Our holding in Wells v. Commonwealth, 6 Va. App. 541, 371 S.E.2d 19 (1988), does not compel a different result. In Wells, we discussed Fourth Amendment abandonment principles in dicta. We opined that when the defendant, while fleeing from police in his vehicle, drove the wrong way into the one-way driveway of a public school, stopped his vehicle as if to surrender, and then fled the scene on foot, he "surrendered his expectation of privacy in the vehicle" and could not "object to anything that transpired after he fled the scene." Id. at 545, 555, 371 S.E.2d at 21, 26. Appellant's case is readily distinguishable because he parked his vehicle alongside other cars in a private parking lot and exited the vehicle *before* Officer Maxey approached and initiated a consensual encounter. The evidence here, viewed in the light most favorable to the Commonwealth, fails to establish that when appellant fled on foot after Officer Maxey voiced an intention to pat him down, he did so with an intent to abandon the vehicle. Compare Hawley v. Commonwealth, 206 Va. 479, 480-83, 144 S.E.2d 314, 315-17 (1965) (where the defendant, upon checking out of a motel, obtained permission from the manager to leave his car on the motel property for three or four days but had not returned to claim it after eight days, at which time the manager telephoned police, holding that the defendant "determined to abandon any right in the automobile" at some time prior to the search), United States v. Lynch, 290 F. Supp. 2d 490, 493, 497 (M.D. Pa. 2003) (holding the defendant abandoned any reasonable expectation of privacy in his vehicle when, in response to a police pursuit, he fled the vehicle while the driver's door was open and the motor was still running), and Oswald, 783 F.2d at 667 (holding the

- 9 -

evidence established the defendant abandoned the car on the side of the road when it caught on

fire because he caught a ride with a passing motorist, did not report the fire, and had not returned

to the scene of the fire two to three hours afterward, "the span of time in which a person having a

legitimate expectation of privacy in the car's contents could reasonably have been expected to

show up"), with United States v. Brown, No. 98-6720 (6th Cir. Mar. 15, 2000), available at 2000

U.S. App. LEXIS 4250 (holding in dicta that the prosecution failed to establish the defendant

abandoned his vehicle after a shooting, where it was parked two blocks from the scene of the

shooting and was found to be on fire a little over three hours after the shooting, and the

defendant left the scene of the shooting on foot, was not seen anywhere near his vehicle

afterward, and was not shown to have known that his car had burned before he was taken into

custody for the shooting), and People v. Anderson, 246 N.E.2d 508, 509 (N.Y. 1969) (holding

abandonment not proved where the defendant "dropped a tin box just prior to the police officer's

making contact with the defendant's hand," as the evidence did not prove "the defendant threw it

away or attempted to dispose of it" and the police officer "picked up the box so soon after it had

been dropped that it [was] impossible to determine whether or not the defendant, if given the

opportunity, would have picked up the box himself").

## B.  SUFFICIENCY OF THE EVIDENCE

Although we reverse appellant's conviction on constitutional grounds,

> we address [his] sufficiency argument in order to ensure that a
> retrial on remand will not violate double jeopardy principles:  "If
> the evidence adduced at trial was insufficient to convict
> [appellant], he is entitled to an acquittal; if he is so entitled, a
> remand for retrial would violate the Constitution's prohibition
> against double jeopardy."  Parsons v. Commonwealth, 32 Va. App.
> 576, 581, 529 S.E.2d 810, 812-13 (2000).  "However, when
> assessing the sufficiency of the evidence on appeal, 'we consider
> all admitted evidence, including illegally admitted evidence.'"
> Sprouse v. Commonwealth, 53 Va. App. 488, 493, 673 S.E.2d 481,
> 483 (2009) (quoting Hargraves v. Commonwealth, 37 Va. App.
> 299, 312-13, 557 S.E.2d 737, 743 (2002)).

Wilder v. Commonwealth, 55 Va. App. 579, 594, 687 S.E.2d 542, 549 (2010). Therefore, we must consider the improperly admitted cocaine and marijuana in our sufficiency analysis, which we conduct solely for purposes of the required double jeopardy analysis.

In considering the issue of the sufficiency of the evidence on appeal, we view it in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences deducible therefrom. E.g., Rawls v. Commonwealth, 272 Va. 334, 349, 634 S.E.2d 697, 704 (2006). We also defer to the credibility findings of the trial court, as the fact finder. See, e.g., Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993) (holding the fact finder, in its role of assessing witness credibility, may accept the parts of a witness' testimony it finds believable and reject other parts as implausible).

To convict a person of possessing illegal drugs, "the Commonwealth must prove that the defendant was aware of the presence and character of the drugs and that he intentionally and consciously possessed them." Andrews v. Commonwealth, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975). Possession of a controlled substance may be actual or constructive. E.g., Clodfelter v. Commonwealth, 218 Va. 619, 622, 238 S.E.2d 820, 822 (1977). Establishing constructive possession requires proof "that the defendant was aware of both the presence and character of the [item] and that it was subject to his dominion and control." Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984). A person's ownership or occupancy of premises on which the subject item is found, proximity to the item, and statements or conduct concerning the location of the item are probative factors to be considered in determining whether the totality of the circumstances supports a finding of possession. Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 831-32 (1997).

Here, although nothing in the record established the car was actually registered to appellant, the evidence, viewed in the light most favorable to the Commonwealth, proved

appellant admitted to Officer Maxey that the car was his. Although appellant told Officer Maxey he had "just" bought the car and testified at trial he had had it for only 15 minutes, the car contained a large quantity of clothing, as well as photos of appellant and his infant son. Appellant was also the only occupant of the car immediately prior to the search. Although the drugs were not in plain view, the fact that the center console was "popped up" was obvious to Officer Maxey when he got inside the car, and settled principles provide that people do not relinquish control of items of value like drugs or leave them in places where others might find them. See Brown v. Commonwealth, 15 Va. App. 1, 9, 421 S.E.2d 877, 883 (1992) (en banc). Thus, the evidence was sufficient to prove appellant constructively possessed the drugs.

Because the evidence, including the improperly admitted evidence, was sufficient to support appellant's convictions for the charged offenses, our remand of those charges for additional proceedings does not violate the prohibition against double jeopardy.

III.

For these reasons, we hold the denial of appellant's motion to suppress was error. Thus, we reverse his convictions. Because the evidence, including the illegally admitted evidence, was sufficient to support his convictions for the charged offenses, a remand to the trial court will not violate double jeopardy principles. Thus, we remand for additional proceedings consistent with this opinion if the Commonwealth be so advised.

Reversed and remanded.