COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Causey and Senior Judge Petty

SEAN ANTONIO BURRUS

                                          MEMORANDUM OPINION[*]
v.        Record No. 1349-23-1                    PER CURIAM
                                          OCTOBER 1, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

(J. Barry McCracken, Assistant Public Defender, on brief), for
appellant.

(Jason S. Miyares, Attorney General; Jessica M. Bradley, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Norfolk convicted Sean Antonio

Burrus of possession of a Schedule I or II controlled substance with the intent to sell for profit, in

violation of Code § 18.2-248; possession of a firearm while possessing a Schedule I or II controlled

substance, in violation of Code § 18.2-308.4; and possession of a firearm by a nonviolent convicted

felon, in violation of Code § 18.2-308.2. On appeal, Burrus argues that the evidence was

insufficient to support his convictions. After examining the briefs and record in this case, the

panel unanimously holds that oral argument is unnecessary because "the dispositive issue or issues

have been authoritatively decided, and the appellant has not argued that the case law should be

overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, [as] the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

Investigator James Luttrell of the Norfolk Police Department testified at trial that on November 11, 2022, he was conducting surveillance on an apartment in Norfolk. He had been surveilling the apartment "[f]or many months" after the police had received complaints from neighbors over the period of nearly two years. Around 9:00 p.m. that evening, Investigator Luttrell saw a man knock on the door to the apartment. Burrus then "poked his head out of the top window" and spoke with the man. Investigator Luttrell recalled that Burrus "pulled his head back in the window, went back downstairs after a few minutes, looked around and handed the individual" an item. Investigator Luttrell stated that during his surveillance of the apartment, "I have seen multiple individuals come and go from that place, but the one person that I saw on the regular was Mr. Burrus." He reiterated that Burrus "was coming and going frequently," and he confirmed that Burrus stayed overnight at the apartment on at least two occasions. The police then obtained a search warrant for the apartment, and the police executed that search warrant at 8:15 a.m. on November 15, 2022. Investigator Luttrell was present at that time, and he noted that Burrus and a woman were in the apartment. When the officers escorted Burrus from the apartment, Burrus "made a spontaneous utterance that, 'I don't know what's going on. I just live here.'"

Investigator Andrew Mondie of the Norfolk Police Department testified at trial that he was also present when the police executed the search warrant on the apartment. After the police arrested Burrus and secured the apartment, Investigator Mondie went inside the apartment to collect evidence. On top of a kitchen cabinet, Investigator Mondie found a firearm that had "a round in the chamber, along with a magazine and a total of nine extra rounds." He also found "a plastic bag that contained crack cocaine with a total weight of 27.57 grams." He noted that he could see "the edge of a plastic bag," which was "directly next to the firearm on top of the cabinet in the kitchen." On the kitchen counter, Investigator Mondie found a "box containing the glass vile [sic] that is often used to smoke crack cocaine," as well as "a digital scale with baking soda on top of it and a container of baking soda next to them, which is commonly used to make crack cocaine with powdered cocaine."

Investigator Mondie further testified that on a table near the bed, he found "a small plastic bag of powdered cocaine, total weight of 0.28 grams," which was next to "little vials that contain a flower -- often people pull the flower out and use it to smoke crack cocaine." He also found "a bag containing a [sic] 119.53 grams and another bag containing 123.87 grams of a suspected cutting agent that was found on a backpack at the foot of the bed that also contained a spoon and a sifter inside of it commonly used to manufacture narcotics." In a lunch box, he found "multiple empty gelatin caps, then two bags containing a cutting agent, as well as a sifter and a spoon." In addition, Investigator Mondie found two cell phones in the apartment, including "an iPhone recovered from the bed in the main room." Finally, he found cash on a table next to the bed, as well as "a debit card that had the name of Sean A. Burrus on it that was on that table next to where the money was found." Testifying as an expert in "the use of packaging and distribution of controlled substances," Investigator Mondie opined that the amount of cocaine recovered "was inconsistent with personal

use" given the related drug paraphernalia, the digital scales, the firearm, and the other items that were found in the apartment.

Following his arrest, Burrus spoke to Investigator Luttrell at the police operations center, where Burrus waived his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Burrus told Investigator Luttrell that "he was a drug user" and that "he does distribute cocaine" for a man who goes by two nicknames: "G" and "Big man." Burrus also told Investigator Luttrell that "he stays at the apartment" where the search warrant was executed and that the man "is in a relationship with the landlord of the apartment." He admitted that "he has on occasion distributed narcotics for 'G' or 'Big man.'" Investigator Luttrell testified that he asked Burrus about the specific transaction he witnessed on November 11, 2022, and Burrus explained that "'Big man' or 'G' gives him something to go give to somebody, that that is what he does, because that is how he -- that is how he lives and that is how he stays at the apartment. That is how 'G' allows him to stay at the apartment." Investigator Luttrell clarified that the man would give Burrus "cocaine to go give to someone."

After the Commonwealth presented its evidence, counsel for Burrus moved to strike. Burrus's counsel argued, "There was some evidence of other drugs found in the apartment, but there is no evidence at this point to show that Mr. Burrus was aware of this stuff that was found on top of the cabinet." He maintained that the "large quantity of cocaine that is found on top of the cabinet and the firearm" were "not within eyesight of anyone walking around the apartment." The trial court denied the motion.

Burrus testified in his own defense. He claimed that the apartment belonged to his friend's father, Brion Davis, who goes by the nickname "G." He testified, "I have stayed there overnight, but I haven't -- I do not live there." Although he acknowledged that he had keys to the apartment and that he had previously delivered drugs for "G" at the apartment, he denied that he had told the

police that he delivered drugs for "G" in exchange for being allowed to stay at the apartment. Burrus explained that the night before the search warrant was executed, "I went to a party and I was intoxicated and with a female, which was the female that was there, so we just pulled over and stayed the night there." He maintained that he "didn't go in the kitchen at all" and that he instead "went straight to sleep." He also maintained that he did not remember ever seeing anything on top of the kitchen cabinet and that he did not know anything about the drugs or the firearm that were found in the apartment. Burrus admitted that he was a convicted felon.

After presenting the defense's evidence, counsel for Burrus renewed his motion to strike, arguing that "just because there is evidence of other drugs that is in open view doesn't show that the defendant was aware of that or was aware of the items found on top of the cabinet." The trial court denied the motion, finding that Burrus "admitted he lived there" and that "[t]he fact that other people might have come and gone is consistent with Mr. Luttrell's observation." The trial court opined that

> [t]he evidence of distribution is overwhelming and the presence of the gun, it is possession, but I believe that the totality of the evidence does suggest that the defendant was aware that the gun was there. Guns are often in the same location as the distribution of narcotics since it is a dangerous business.

Concluding that "the Commonwealth has met its burden of proof in proving three charges," the trial court found Burrus guilty of the charged offenses. Burrus appeals to this Court.

ANALYSIS

On appeal to this Court, Burrus contends that the trial court erred in denying his motions to strike "because the evidence presented did not establish that the Appellant was ever in either actual or constructive possession of the cocaine and pistol found during the search of" the apartment. Burrus argues that the Commonwealth did not exclude his hypothesis of innocence

that he did not constructively possess the drugs or firearm because someone else could have left them behind in the apartment.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession; evidence of actual possession is not necessary." *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)). Constructive possession principles apply equally to considering possession of a firearm and possession of illegal drugs. *See id.* "Establishing constructive possession requires proof 'that the defendant was aware of both the presence and character of the [item] and that it was subject to his dominion and control.'" *Watts v. Commonwealth*, 57 Va. App. 217, 232-33 (2010) (alteration in original) (quoting *Powers v. Commonwealth*, 227 Va. 474, 476 (1984)). The Commonwealth is not required to prove that the defendant's possession was exclusive. *Smallwood*, 278 Va. at 630.

The Supreme Court has recognized that constructive possession may be established by "evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the" contraband and that it "was subject to his dominion and control." *Id.* (quoting *Bolden*, 275 Va. at 148). Although "ownership or occupancy alone is insufficient to prove knowing possession of drugs located on the premises," *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992), "proximity to the contraband" and "[o]wnership or occupancy of the premises on which the contraband was found" provide probative evidence of constructive possession, *Archer v. Commonwealth*, 26 Va. App. 1, 12 (1997). The question of whether evidence is sufficient to prove constructive possession "is largely a factual one and must be established by evidence of the acts, declarations and conduct of the accused." *Smallwood*, 278 Va. at 631 (quoting *Ritter v. Commonwealth*, 210 Va. 732, 743 (1970)).

It is well-established that in considering a sufficiency challenge, "[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). The Commonwealth "need exclude only reasonable hypotheses of innocence that 'flow from the evidence itself, and not from the imagination' of the defendant." *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (quoting *Pijor*, 294 Va. at 512). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Pijor*, 294 Va. at 512-13 (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). "In other words, in a circumstantial evidence case, such as the case currently before us, the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a

reasonable doubt of a defendant's guilty knowledge of contraband." *Ervin v. Commonwealth*, 57 Va. App. 495, 505 (2011) (*en banc*).

Here, the totality of the evidence supports the trial court's rejection of Burrus's hypothesis of innocence and also supports the trial court's conclusion that Burrus possessed the drugs with the intent to distribute them — while also possessing the firearm as a convicted felon. Burrus acknowledged both to Investigator Luttrell and during his testimony that he occupied the apartment. Burrus also admitted to Investigator Luttrell that he delivered cocaine from the apartment, including to the man that Investigator Luttrell watched approach the apartment just days before the search of the apartment and Burrus's arrest. In addition, Investigator Mondie testified that the large amount of cocaine found in plain view in the apartment was inconsistent with personal use. The related drug paraphernalia, the digital scales, the cash, the cell phones, Burrus's personal debit card, and the other items were also found near the illegal drugs in plain view in the apartment. Therefore, considering the totality of the evidence, a rational finder of fact could conclude beyond a reasonable doubt that Burrus was aware of both the presence and character of the drugs and the firearm — and that those items were subject to his dominion and control. Consequently, we certainly cannot say that the trial court erred in finding that the evidence was sufficient to support each of Burrus's convictions.

## CONCLUSION

For all of the foregoing reasons, we affirm the trial court's judgment, and we uphold each of Burrus's convictions.

*Affirmed.*